UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:19-CV-23-TBR

SANDERS, *et al.*,                                                                 PLAINTIFFS

v.

CITY OF PEMBROKE, *et al.*,                                                        DEFENDANTS

## MEMORANDUM OPINION

This matter is before the Court on Defendants City of Pembroke, Kentucky, Pembroke Mayor Judy R. Peterson, and Police Chief Mark Reid's Motion to Dismiss Plaintiffs' First Amended Complaint. [DN 88]. Plaintiffs Leonia Sanders, individually, and Leonia Sanders, the parent and guardian of Ronald Sanders, responded, [DN 95], and Defendants replied, [DN 97]. This matter is ripe for adjudication. For the reasons stated herein, Defendants' Motion to Dismiss, [DN 88], is GRANTED.

## BACKGROUND

Plaintiff Leonia Sanders lives in Pembroke, Kentucky with her twenty-seven-year-old son, Ronald. [DN 51 at 771–72]. Mr. Sanders suffers from mental illness and Ms. Sanders worked with the Kentucky Cabinet for Health and Family Services and Pennyroyal Mental Health Center ("PMHC") to manage her son's medications. *Id.* However, Ms. Sanders claims that these institutions "betrayed her and Ronald, and with the help of county and municipal law enforcement, [] conspired to kidnap her son" by making him a ward of the state. *Id.* at 772. The Amended Complaint provides a detailed description of the alleged conspiracy and implicates multiple individuals in Christian County. However, given that the current motion was filed by the City of Pembroke, Mayor Peterson, and Chief Reid, the Court will focus its recitation of the facts on these three Defendants.

According to Plaintiffs, the alleged conspiracy began in February 2017. *Id.* at 777. Plaintiffs had recently moved to Pembroke and Mr. Sanders became known in the community for listening to his boombox and dancing around town. *Id.* On July 26, 2017, Police Chief Mark Reid was off-duty at his home when he received a complaint from an apartment complex manager that a young black man who appeared intoxicated was walking around the Pembroke Apartments carrying a boombox and a bottle in a brown paper bag. *Id.* at 778. Chief Reid called a citizen's police dispatch line to report the disturbance. He told the operator that he believed the individual was Mr. Sanders and described him as a "slim black man." *Id.* Shortly thereafter, a Christian County sheriff's deputy observed Mr. Sanders in a nearby parking lot. *Id.* However, Mr. Sanders was ultimately encountered, breathalyzed, and arrested at the home of his acquaintance. He was charged with disorderly conduct and alcohol intoxication and taken to jail. *Id.* After Mr. Sanders' arrest, Plaintiffs claim that the deputy radioed Chief Reid stating, "I've got him." *Id.* at 779.

In August 2017, Ms. Sanders filed a formal complaint against Chief Reid with the Kentucky State Police claiming he had targeted her son based on his race and disability. *Id.* She based her complaint on Chief Reid's phone call to police dispatch which ultimately resulted in Mr. Sanders' arrest. *Id.* After filing the complaint, Ms. Sanders contacted Chief Reid directly to ask why her son was arrested when the breathalyzer test had revealed that Mr. Sanders was not legally intoxicated at the time he was apprehended by police. *Id.* at 780. According to Ms. Sanders, Chief Reid responded, "her family should move back to Tennessee before her son ends up dead or in a ditch." *Id.*

On October 23, 2017, Chief Reid cited Mr. Sanders for third degree criminal trespassing at the residence of Clara Edwards. *Id*. Mr. Sanders and Ms. Edwards were acquittances and he worked for her around her home. *Id.* Plaintiffs claim that before this arrest, Chief Reid had installed

video cameras around Ms. Edwards' property "to keep an eye on Ronald Sanders" and told him "on numerous occasions to stay away from Ms. Edwards' house." *Id.* at 781.

Beginning in December, Plaintiffs contend that individuals working at PMHC began pushing for state guardianship of Mr. Sanders, falsely claiming that he was out of control and Ms. Sanders did not give him his medication. *Id.* at 782. On February 8, 2018, the Assistant Christian County Attorney filed a petition for emergency guardianship of Mr. Sanders. *Id.* at 786. An evidentiary hearing was scheduled for February 13, but Plaintiffs claim they were never notified about the proceedings. *Id.* at 788.

On February 13, Ms. Sanders saw Chief Reid at a Dollar General store. *Id.* at 789. She asked him "why he, the City of Pembroke, and Pennyroyal were targeting her son and trying to take him away from her." *Id.* Chief Reid responded that she "was burning bridges with the City of Pembroke and Pennyroyal." *Id.* Plaintiffs also note that Chief Reid did not "inform, or otherwise mention to, Ms. Sanders that a hearing to appoint a state guardian over Ronald Sanders was scheduled that very afternoon." *Id.*

Later that day, a district court judge entered an order appointing Maureen Leamy and the Cabinet for Health and Family Services as emergency guardians of Mr. Sanders. *Id.* Plaintiffs claim that Chief Reid attended the hearing and after it had concluded, the judge said, "Thank you, Chief Reid. Good job." *Id.*

That evening, Defendant "Tolliver lured Leonia and Ronald Sanders to the PMHC location in Hopkinsville, by requesting via telephone that Mr. Sanders come in for a psychological evaluation." *Id.* at 791. Once they arrived, Christian County Sheriff's Deputy Rich Burgess and Lieutenant Meyers read the guardianship order to Ms. Sanders and attempted to transport Mr. Sanders to Madisonville. *Id.* Mr. Sanders resisted the transfer and ran across the Pennyrile

Highway. *Id.* at 792. The law enforcement officers chased Mr. Sanders, apprehended him, and took him to jail. *Id.* On February 14, Mr. Sanders was arraigned on charges of fleeing/evading the police and resisting arrest. *Id.*

On February 22, two of Ms. Sanders' acquaintances met with Mayor Peterson. *Id.* at 796. They claimed that Mr. Sanders was being targeted by Chief Reid because of his intellectual disability and race. *Id.* Mayor Peterson responded that "Mr. Sanders was a black kid with a boombox, dancing in the street, which made people in the community afraid." *Id.*

On March 28, all three of Mr. Sanders' pending criminal cases were dismissed upon a stipulation of probable cause by Mr. Sanders' defense counsel. *Id.* at 797. On May 17, a jury found Mr. Sanders wholly disabled in managing his finances and partially disabled in managing his personal affairs. *Id.* at 798. On May 29, the court conducted a guardianship hearing and granted Ms. Sanders legal guardianship of her son. *Id.* at 799. Plaintiffs claim that Defendant Reba Pleasant attended the hearing and called Chief Reid to report that Ms. Sanders had gained guardianship. *Id.*

On February 13, 2019, Plaintiffs filed the current action alleging violations of 42 U.S.C. § 1985 and 42 U.S.C. § 1983, defamation, abuse of process, assault, battery, false imprisonment, false arrest, and outrage. [*See* DN 51]. Defendants City of Pembroke, Mayor Peterson, and Chief Reid then filed the instant motion to dismiss. [DN 88].

## LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a motion to dismiss under Rule 12(b)(6), a party must "plead enough 'factual matter' to raise a 'plausible' inference of wrongdoing." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

4

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). When considering a Rule 12(b)(6) motion to dismiss, the Court must presume all of the factual allegations in the complaint are true and draw all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc.*, 552 F.3d at 434 (citing *Great Lakes Steel,* 716 F.2d at 1105). "The court need not, however, accept unwarranted factual inferences." *Id.* (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). Should the well-pleaded facts support no "more than the mere possibility of misconduct," then dismissal is warranted. *Iqbal*, 556 U.S at 679. The Court may grant a motion to dismiss "only if, after drawing all reasonable inferences from the allegations in the complaint in favor of the plaintiff, the complaint still fails to allege a plausible theory of relief." *Garceau v. City of Flint*, 572 F. App'x 369, 371 (6th Cir. 2014) (citing *Iqbal*, 556 U.S. at 677–79).

## DISCUSSION

### I. 42 U.S.C. § 1985

First, Plaintiffs claim that Defendants conspired against Mr. and Ms. Sanders in violation of 42 U.S.C. § 1985(3). The Sixth Circuit has held that a viable 42 U.S.C. § 1985(3) claim must contain:

> (1) [A] conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States.

*Johnson v. Hills & Dales Gen. Hosp.,* 40 F.3d 837, 839 (6th Cir. 1994) (citing *Hilliard v. Ferguson,* 30 F.3d 649, 652–53 (5th Cir. 1994)). A plaintiff "must also establish that the conspiracy was motivated by a class-based animus." *Johnson,* 40 F.3d at 839. Additionally, the alleged conspiracy must "be pled with some degree of specificity and . . . vague and conclusory allegations

5

unsupported by material facts will not be sufficient to state such a claim." *Center for Bio–Ethical Reform, Inc. v. City of Springboro,* 477 F.3d 807, 832 (6th Cir. 2007) (quoting *Gutierrez v. Lynch,* 826 F.2d 1534, 1538–39 (6th Cir. 1987)).

In this case, Plaintiffs allege that the Defendants entered into an agreement "with the objective of legally incapacitating and physically removing Ronald Sanders from Christian County, effectively kidnapping him, through an abuse of the judicial and social services processes," in violation of Mr. Sanders' Fourth and Fourteenth Amendment rights and Ms. Sanders' Fourteenth Amendment rights. [DN 51 at 800]. Plaintiffs claim that Chief Reid's role in the conspiracy was to unlawfully arrest, detain, and physically injure Mr. Sanders. *Id.* Moreover, Plaintiffs assert Chief Reid targeted Mr. Sanders because he was black and disabled. *Id.*

In their Motion to Dismiss, Defendants argue that these allegations are not supported by the facts in the Amended Complaint. [DN 88-1 at 972]. First, Chief Reid never arrested, detained, or physically injured Mr. Sanders. *Id.* at 973. Although Chief Reid cited Mr. Sanders for criminal trespassing on October 23, 2017, Plaintiffs admit that Mr. Sanders was not arrested or detained at that time. *Id.* Moreover, Defendants claim that Plaintiffs have failed to establish that Chief Reid was motivated by any class-based animus. *Id.* at 974. The only allegation in the Amended Complaint on this front is that Chief Reid described Mr. Sanders as a black man when reporting the disturbance at the Pembroke Apartments to police dispatch. *Id.* Plaintiffs did not directly address this argument in their Response.

As for Mayor Peterson, Defendants argue that she "played no role in the citations, arrests, subsequent prosecutions or guardianship proceedings concerning Mr. Sanders and at no point do the Plaintiffs allege otherwise." *Id.* at 975. Although Count One claims that Mayor Peterson entered into an agreement and shared common plan with the objective of removing Mr. Sanders

from Christian County, the only reference to Mayor Peterson communicating with anyone involved in these events is Ms. Sanders herself. *Id.* In response, Plaintiffs claim Mayor Peterson's comment that Mr. Sanders was arrested because he "was a black kid with a boombox, dancing in the street, which made people in the community afraid," is direct evidence of her role in the conspiracy to arrest Mr. Sanders on June 26, 2017 and her discriminatory animus. [DN 95 at 1202]. Moreover, Plaintiffs state, "it is reasonable to infer that Peterson communicated with Chief Reid prior to the July 26, 2017 false arrest about law enforcement objectives and other city business," thus, "it is reasonable to infer that Peterson had a conspiratorial agreement with Chief Reid prior to July 26, 2017 to arrest Ronald Sanders." *Id.* at 1202–03.

The Court finds that Plaintiffs have failed to plead specific facts indicating that Chief Reid and Mayor Peterson were involved in a conspiracy motived by class-based animus. Plaintiffs' assertion that "Chief Reid targeted Mr. Sanders because he was black and disabled" is a conclusory allegation unsupported by any material facts in the Amended Complaint. [DN 51 at 800]; *Harrison v. Woolridge*, No. 3:18-CV-00388-GNS, 2019 WL 2453665, at *6 (W.D. Ky. June 12, 2019) (plaintiff offered multiple allegations of racial animus, but no specific facts to support the conclusion). Moreover, even if Mayor Peterson's statement regarding Mr. Sanders' arrest demonstrated race-based animus, the Amended Complaint fails to raise a plausible inference that Mayor Peterson was involved in the alleged conspiracy. At most, the Amended Complaint alleges that she knew about Mr. Sanders' arrest more than seven months after it occurred. Therefore, the Court finds that Plaintiffs have failed to state a claim pursuant to 42 U.S.C. § 1985.

## II.    42 U.S.C. § 1983

### A. Chief Reid and Mayor Peterson

Count Two of the Amended Complaint alleges that Defendants conspired against Plaintiffs in violation of 42 U.S.C. § 1983. Specifically, they claim that Chief Reid and Mayor Peterson, while acting under the color of law, used excessive force and effected the unreasonable seizure and arrest of Mr. Sanders on July 26, 2017, October 23, 2017, and February 14, 2018 in violation of his Fourth and Fourteenth Amendment rights. [DN 51 at 808]. Plaintiffs' Response to the Motion to Dismiss further clarified these claims as follows: (1) Chief Reid conspired to carry out the deprivation of Mr. Sanders' right to be free from unreasonable excessive force and false arrest on July 26, 2017; (2) Mayor Peterson conspired to carry out the deprivation of Mr. Sanders' right to be free from unreasonable excessive force and false arrest on July 26, 2017; and (3) Chief Reid conspired to carry out the deprivation of Mr. Sanders' procedural and substantive due process rights on February 13, 2018. [DN 95 at 1197].

To state a claim of civil conspiracy under § 1983, a plaintiff must show that there was a single plan, that the co-conspirators shared in the objective of the conspiracy, violating the plaintiff's constitutional rights, and that an overt act was committed in furtherance of the conspiracy. *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985). As previously discussed, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 566 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy"); *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (indicating that "'[i]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983'") (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)).

First, Plaintiffs have failed to plead facts supporting a plausible suggestion that Chief Reid conspired to violate Mr. Sanders' constitutional rights during the July 26 arrest. The facts indicate that Chief Reid was off-duty when he reported a community member's concern that an intoxicated man was walking around Pembroke Apartments with a boombox and a bottle in a brown paper bag. Plaintiffs acknowledge that Mr. Sanders was known around Pembroke for playing his boombox and dancing in public. [*See* DN 51 at 777]. Therefore, it was a reasonable for Chief Reid to advise police dispatch that it was likely Mr. Sanders causing the disturbance. Moreover, there are no facts to suggest that Chief Reid somehow planned or even discussed how the responding officer should handle the situation. Furthermore, given that Chief Reid reported the disturbance to police dispatch, he would not have even known which police officer would respond to the call. Accordingly, the Amended Complaint fails to support a plausible suggestion of conspiracy pursuant to § 1983.

The same is true for Plaintiffs' claim that Mayor Peterson was involved in the conspiracy to arrest Mr. Sanders on July 26. As previously discussed, the Amended Complaint merely indicates that Mayor Peterson was aware of the circumstances of the arrest seven months after the fact. This allegation alone does not support a plausible suggestion that she was involved in a conspiracy to deprive Mr. Sanders of his right to be free from unreasonable excessive force and false arrest.

Finally, Plaintiffs fail to allege facts to support a plausible suggestion that Chief Reid conspired to violate Mr. Sanders' due process rights on February 13, 2018—the day of the guardianship hearing. Plaintiffs claim that Chief Reid's installation of surveillance cameras to spy on Ms. Edward's property is evidence of a conspiratorial agreement with Assistant Christian County Attorney, Maureen Leamy, to mislead a judge into believing that Mr. Sanders needed an

emergency state guardian. [DN 95 at 1205]. Plaintiffs' claim Chief Reid's presence in the courtroom during the hearing and the judge's statement that Chief Reid did a "good job," is further evidence of the conspiracy. *Id.* These facts are insufficient to support a plausible suggestion that Chief Reid was involved in a conspiracy to violate Mr. Sanders' due process rights. The Amended Complaint indicates that Chief Reid placed surveillance cameras around Ms. Edwards' property before citing Mr. Sanders for trespassing in October 2017. [DN 51 at 781]. Plaintiffs' assertion that this action was part of a conspiratorial agreement to seek emergency guardianship of Mr. Sanders four months later is conclusory and gains little support from the fact that Chief Reid attended the guardianship hearing. Thus, Plaintiffs fail to state a claim against Chief Reid pursuant to § 1983.

**B. The City of Pembroke**

Count Two also alleges that the City of Pembroke employed an explicit policy, observed custom, and deliberate practice of targeting, unlawfully arresting, or otherwise preying on Mr. Sanders for the purpose of violating his constitutional rights. *Id.* at 808. To succeed on a § 1983 claim against a local government, 'the plaintiff must prove the injury of which he complains was caused by an unconstitutional government policy or custom.'" *Monnell v. Dep't of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A "municipality can be held liable under § 1983 for a single decision by the municipality's policymakers" if that policymaker had "final authority to establish policy with respect to the action ordered.'" *Feliciano v. City of Cleveland,* 988 F.2d 649, 655 (6th Cir. 1993) (quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)); *Meyers v. City of Cincinnati,* 14 F.3d 1115, 1118 (6th Cir. 1994). For instance, "[i]f the sheriff's actions constitute county 'policy,' then the county is liable for them." *McMillian v. Monroe County,* 520 U.S. 781, 783, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1987).

"At the pleading stage, a plaintiff must 'plead[] factual content that allows the court to draw the reasonable inference' that the [county] maintained a policy, custom, or practice" that deprived him of his constitutional rights." *Vanheck v. Marion Cty.*, No. 317CV00653RGJRSE, 2019 WL 2717773, at *6 (W.D. Ky. June 28, 2019) (quoting *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). "Conclusory allegations 'devoid of further factual enhancement' are insufficient. *Id.* (quoting *Iqbal*, 556 U.S. at 678; *see also D'Ambrosio v. Marino*, 747 F.3d 378, 388 (6th Cir. 2014)); *see also Vidal v. Lexington Fayette Urban Cty. Gov.*, 2014 WL 4418113, at *3 (E.D. Ky. Sep. 8, 2014) ("[A] complaint must contain more than bare statements that the alleged constitutional violation was caused by a policy or custom to survive a motion to dismiss.").

Here, Plaintiffs allege that Chief Reid and Mayor Peterson's actions constituted city policy. [DN 95 at 1203]. Specifically, Plaintiffs claim that Mayor Peterson's statement regarding Mr. Sanders' July 26 arrest is evidence that the City was deliberately targeting Mr. Sanders for arrest and prosecution. *Id.* Additionally, Plaintiffs assert that Chief Reid's prior instances of "intimidating" Ms. Sanders, including taking her driver's license during a traffic stop before the events involving Mr. Sanders transpired and his warning that Mr. Sanders would end up dead in a ditch, evidence an official policy to violate Mr. Sanders' constitutional rights. *Id.* The Court finds that these facts fails to support a reasonable inference that the City of Pembroke maintained a policy, custom, or practice that deprived Mr. Sanders of his constitutional rights. Thus, Plaintiffs' fail to state a § 1983 claim against the City of Pembroke.

### III.     Assault, Battery, False Imprisonment, and False Arrest

Count Four of the Amended Complaint alleges that Chief Reid and other law enforcement officers committed assault, battery, false imprisonment, and false arrest in violation of state law.

[DN 51 at 812]. Defendants argue that this claim should be dismissed because Chief Reid never arrested, detained, or had any physical contact with Mr. Sanders. [DN 88-1 at 976–77]. In response, Plaintiffs state that they "are not required to allege that Chief Reid had physical contact with the Plaintiffs because it is sufficient that his co-conspirator, Eddie Frye performed the tortious physical touching the illegal character of which Chief Reid was aware." [DN 95 at 1209].

Plaintiffs have failed to plead enough factual matter to raise a plausible inference of assault, battery, false imprisonment, or false arrest. The Amended Complaint does not contain facts that Chief Reid arrested, detained, or made physical contact with Mr. Sanders. Moreover, any theory that Chief Reid could be held liable for his co-conspirator's torts fails given that the Court has dismissed the conspiracy claims against Chief Reid. Thus, the Amended Complaint fails to state a claim of assault, battery, false imprisonment, or false arrest against Chief Reid.

## IV. Outrage

Count Four of the Amended Complaint also alleges that Defendants' conduct "was so atrocious and intolerable that it exemplifies the tort of outrage." [DN 51 at 813]. Defendants argue this claim should be dismissed because none of the factual allegations made against Chief Reid and Mayor Peterson rise to such an extreme and outrageous level as to permit recovery. [88-1 at 977–78]. In response, Plaintiffs claim Ms. Sanders was effectively the victim of state-sponsored kidnapping which is extreme enough to support a claim of outrage. [DN 95 at 1210].

Kentucky courts have "set a high threshold for outrage claims," *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 791 (Ky. 2004). "[A] claim for the tort of outrage requires the plaintiff to prove conduct which is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Humana of Ky., Inc. v. Seitz*, 796 S.W.2d 1, 3 (Ky. 1990) (quoting

Restatement (Second) of Torts § 46 cmt.d (1965)). The Kentucky Supreme Court reasoned in *Kroger Co. v. Willgruber* that "citizens in our society are expected to withstand petty insults, unkind words and minor indignities. Such irritations are a part of normal, every day life and constitute no legal cause of action. It is only outrageous and intolerable conduct which is covered by this tort." 920 S.W.2d 61, 65 (Ky. 1996).

To support their outrage claim, Plaintiffs cite to *Goebel v. Arnett* in which the Kentucky Court of Appeals concluded that an adoption attorney's actions were extreme and outrageous enough to permit recovery. 259 S.W.3d 489, 493 (Ky. Ct. App. 2007). In that case, Arnett represented Goebel as she gave up her child for adoption. *Id.* According to Goebel, Arnett was aware she was in a vulnerable state of mind during the adoption proceedings, but nevertheless, Arnett "deceived, threatened, and eventually coerced her into terminating her parental rights." *Id.* Moreover, Arnett encouraged Goebel "to perjure herself and to commit a fraud upon the court" in order to ensure the adoption process would be completed. *Id.* The Court of Appeals found this behavior was sufficient to support a claim of outrage, especially in light of the fiduciary duty owned by an attorney to a client. *Id.*

In this case, Plaintiffs fail to allege facts sufficiently extreme to support an outrage claim. The allegations against Chief Reid include: (1) calling police dispatch which led to Mr. Sanders' arrest on July 26; (2) stating that Ms. Sanders and her family should move back to Tennessee before her son ends up dead or in a ditch; (3) citing Mr. Sanders for third degree criminal trespassing after installing video cameras near the property in question; (4) stating that Ms. Sanders was burning bridges in Pembroke; and (5) attending Mr. Sanders' judicial proceedings. *Id.*

Based on these facts, the Court concludes that Chief Reid's conduct was not so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency. It does not

rise to the level of outraged described in *Goebel*, in which an attorney advised her client to commit fraud and perjury, and ultimately coerced a new mother to terminate her parental rights. *See Goebel*, 259 S.W.3d at 493. While some of Chief Reid's statements to Ms. Sanders may have been hurtful and unkind, "[s]uch irritations are a part of normal, every day life and constitute no legal cause of action." *Willgruber*, 920 S.W.2d at 65.

As for Mayor Peterson, the primary allegation against her in the Amended Complaint is that she told disability advocates that Mr. Sanders was arrested because he "was a black kid with a boombox, dancing in the street, which made people in the community afraid." [DN 51 at 796]. Again, while Mayor Peterson's response may have been unkind, her conduct is not sufficiently extreme to sustain an outrage claim under Kentucky law.

## CONCLUSION

For the reasons stated herein, **IT IS HEREBY ORDERED**: Defendants' Motion to Dismiss, [DN 88], is **GRANTED**. A separate order will be entered contemporaneously with this Memorandum Opinion.

**Thomas B. Russell, Senior Judge**
**United States District Court**

January 27, 2020

CC: Attorneys of Record