SANDERS, *et al.*,                                                              PLAINTIFFS

v.

CITY OF PEMBROKE, *et al.*,                                                     DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants Heather Holland, Lindee Monroe, and Rebecca Perry's Motion to Dismiss for Failure to State a Claim, or alternatively, Motion to Dismiss for Lack of Jurisdiction, or alternatively, Motion for Summary Judgment. [DN 93]. Plaintiff Leonia Sanders, individually, and Leonia Sanders, the parent and guardian of Ronald Sanders, responded, [DN 103], and Defendants replied, [DN 104]. This matter is ripe for adjudication. For the reasons stated herein, Defendants' Motion for Summary Judgment, [DN 93], is GRANTED.

**BACKGROUND**

Plaintiff Leonia Sanders lives in Pembroke, Kentucky with her twenty-seven-year-old son, Ronald. [DN 51 at 771–72]. Mr. Sanders suffers from mental illness and Ms. Sanders worked with the Kentucky Cabinet for Health and Family Services ("CHFS") and Pennyroyal Mental Health Center ("PMHC") to manage her son's medications. *Id.* at 772. However, Ms. Sanders claims that these institutions "betrayed her and Ronald, and with the help of county and municipal law enforcement, [] conspired to kidnap her son" by making him a ward of the state. *Id.*. The Amended Complaint provides a detailed description of the alleged conspiracy and implicates multiple individuals in Christian County. However, given that the current motion was filed by Heather Holland, Lindee Monroe, and Rebecca Perry, the Court will focus its recitation of the facts on these three defendants.

1

According to Plaintiffs, the alleged conspiracy began in February 2017. *Id.* at 777. Plaintiffs had recently moved to Pembroke and Mr. Sanders became known in the community for listening to his boombox and dancing around town. *Id.* On July 26, 2017, an apartment complex manager complained to the local police chief that a man with a boombox was dancing near her property and appeared to be intoxicated. *Id.* at 778. Shortly thereafter, Mr. Sanders was arrested and charged with public intoxication. *Id.* at 779. A few months later, on October 23, 2017, Mr. Sanders was charged with trespassing at a personal residence. *Id.* at 780. The next day, Ms. Sanders filed a petition to involuntarily hospitalize Mr. Sanders because he was hearing voices and hallucinating. *Id.* at 781.

In December 2017, Mr. and Ms. Sanders' relationship with the staff at PMHC began to deteriorate. *Id.* at 783. Reba Pleasant, Mr. Sanders' caseworker, told Mr. Sanders that someone other than his mother could be his legal guardian. *Id.* On January 18, 2018, Ms. Sanders claimed she saw Ms. Pleasant inappropriately kiss Mr. Sanders on the mouth. *Id.* at 784. Although PMHC did not find that Ms. Pleasant had acted unprofessionally, she was removed from the case. *Id.* According to the Amended Complaint, on January 29, Ms. Pleasant falsely informed PMHC practitioner Jennifer Villareal that Ms. Sanders refused to provide Mr. Sanders with his medication and failed to properly supervise him. *Id.* She also mentioned Mr. Sanders' trespassing charge, and stated he was a nuisance with his boombox and public drinking. *Id.* Later that day, Janet Tolliver of PMHC filed a Petition for Involuntary Hospitalization and Mr. Sanders was placed in a 72-hour hold. *Id.* at 784–85.

On February 1, 2018, Assistant Christian County Attorney Lincoln Foster advised Heather Holland of CHFS that his office would be filing a Petition for Emergency Guardianship of Mr. Sanders. *Id.* at 786. On February 2, Assistant County Attorney Maureen Leamy signed a Petition

to Determine if Disabled and an Application for Appointment of Fiduciary for Disabled Persons. *Id.* The Application for Appointment of Fiduciary listed the petitioner as "Commonwealth of Kentucky ex rel Maureen Leamy with CFHS Being Appointed" and included Ms. Leamy's signed affidavit stating that Mr. Sanders was in imminent harm, or a danger or a threat of danger to himself or others. *Id.*; [DN 103-2 at 1281]. On February 8, Ms. Holland contacted Jimmy Coyer at PMHC to alert him that Mr. Sanders could require placement at PMHC depending on the outcome of the County Attorney's guardianship petition. [DN 51 at 787–88].

On February 13, 2018, the Christian County district court conducted a guardianship hearing. *Id.* at 789. Mr. and Ms. Sanders claim they were not notified of the proceeding and did not attend; however, Mr. Sanders' previously appointed guardian *ad litem* was present on his behalf. *Id.* Additionally, Ms. Tolliver, Ms. Pleasant, and Lindee Monroe of CHFS were in attendance. *Id.* First, District Court Judge Cotthoff entered an order appointing Ms. Leamy and CHFS as Mr. Sanders' emergency fiduciaries. *Id.* The order suspended Mr. Sanders' right to determine his living arrangement, to consent to medical procedures, and to handle financial responsibilities. *Id.* Additionally, Judge Cotthoff ordered a sheriff to transport Mr. Sanders to PMHC in Madisonville, Kentucky. *Id.* at 790. Next, the court conducted a review of the emergency appointment. *Id.* Ms. Leamy testified that Mr. Sanders' mental illness and his mother's lack of supervision caused Mr. Sanders to incur the public intoxication and trespassing charges. *Id.* Moreover, she claimed the emergency appointment was necessary for Mr. Sanders to avoid future criminal charges and that CHFS was the most appropriate entity to take guardianship. *Id.* Judge Cotthoff concluded the proceedings by ruling that Mr. Sanders would reside at PMHC until a disability hearing took place on April 4, 2018. *Id.*

Later that day, Ms. Tolliver requested Mr. and Ms. Sanders come to PMHC for a psychological evaluation. *Id.* at 791. When they arrived at the facility, two Christian County sheriff's deputies read the order directing Mr. Sanders to be transported to PMHC in Madisonville. *Id.* Mr. Sanders attempted to run away but was apprehended by police. *Id.* He was arrested and charged with fleeing/evading police and resisting arrest. *Id.* at 792. On February 15, Judge Cotthoff ordered Mr. Sanders to seek examination and treatment at Western State Hospital ("WSH") in order to determine his competency to stand trial. *Id.* The Christian County Clerk then faxed Mr. Sanders' guardianship order to WSH. *Id.* at 793. However, the order had been tampered with such that CHFS was listed as Mr. Sanders' sole guardian and Ms. Leamy's name had been removed from the order. *Id.*

Mr. Sanders remained at WSH from February 15 through February 20. *Id.* at 795. During this time, Dr. Susan Redmond-Vaught examined Mr. Sanders and found that he was incompetent to stand trial. *Id.* at 794. Plaintiffs also claim that while Mr. Sanders was at WSH, Rebecca Perry of CHFS signed eight authorization forms as his emergency state guardian, which exceeded the scope of the powers authorized by the guardianship order. *Id.* at 795.

On February 21, 2018, Judge Cotthoff amended the guardianship order to remove Mr. Sanders' right to execute instruments and enter into contracts. *Id.* Mr. Sanders was then transported to PMHC in Madisonville and his case was transferred to Hopkins County District Court. *Id.* at 795–96. On April 11, Ms. Sanders filed a petition to become her son's legal guardian. *Id.* at 797. On April 19, Hopkins County District Judge Massamore conducted an open proceeding regarding Mr. Sanders' disability status. *Id.* While reviewing Mr. Sanders' file, he determined that one of Dr. Redmond-Vaught's evaluations of Mr. Sanders was defective because it was unsigned and

undated. *Id.* The judge ordered a practitioner at Baptist Medical Madisonville to conduct the missing evaluation and set the disability trial for May 17, 2018. *Id.* at 798.

On May 17, a jury found Mr. Sanders disabled in managing his financial resources, and partially disabled in managing his personal affairs. *Id.* On May 29, the district court conduced a hearing to determine whether to grant guardianship to CHFS or Ms. Sanders. *Id.* at 799. At the outset of the hearing, Dondra Meredith, CHFS Assistant General Counsel, clarified for the court that CHFS did not request to be appointed as Mr. Sanders' guardian, stating that while the Christian County Attorney's office may have purported to file the petition on the agency's behalf, CHFS did not petition for guardianship. [*See* DN 94]. Judge Massamore accepted Ms. Meredith's explanation, and after conducting the remainder of the hearing, he granted Ms. Sanders legal guardianship of her son. [DN 51 at 799].

On February 13, 2019, Plaintiffs filed the current action alleging violations of 42 U.S.C. § 1985 and 42 U.S.C. § 1983, defamation, abuse of process, assault, battery, false imprisonment, false arrest, and outrage. [*See* DN 51]. Ms. Holland, Ms. Monroe, and Ms. Perry filed the instant motion to dismiss for failure to state a claim, or alternatively, motion to dismiss for lack of jurisdiction, or alternatively, motion for summary judgment. [DN 93]. Because Defendants relied on exhibits regarding the state court proceedings to support their motion, the Court will analyze Defendant's motion pursuant to Federal Rule of Civil Procedure 56. *See Song v. City of Elyria, Ohio,* 985 F.2d 840, 842 (6th Cir. 1993) (citing Federal Rule of Civil Procedure 12(b) and explaining that if matters outside the pleading are presented, the court will treat a motion to dismiss as one for summary judgment to be disposed of by Rule 56).

**LEGAL STANDARD**

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "may not make credibility determinations nor weigh the evidence when determining whether an issue of fact remains for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001); *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999)). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Back v. Nestlé USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251–52).

As the party moving for summary judgment, Defendants must shoulder the burden of showing the absence of a genuine dispute of material fact as to at least one essential element of Plaintiffs' claims. Fed. R. Civ. P. 56(c); *see also Laster*, 746 F.3d at 726 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Assuming Defendants satisfy their burden of production, Plaintiffs "must—by deposition, answers to interrogatories, affidavits, and admissions on file— show specific facts that reveal a genuine issue for trial." *Laster*, 746 F.3d at 726 (citing *Celotex Corp.*, 477 U.S. at 324).

## DISCUSSION

I.       42 U.S.C. § 1985(3)

First, Plaintiffs claim that Defendants conspired against Mr. and Ms. Sanders in violation of 42 U.S.C. § 1985(3). The Sixth Circuit has held that a viable 42 U.S.C. § 1985(3) claim must contain:

> (1) [A] conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States.

*Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994) (citing *Hilliard v. Ferguson*, 30 F.3d 649, 652–53 (5th Cir. 1994)). A plaintiff "must also establish that the conspiracy was motivated by a class-based animus." *Johnson,* 40 F.3d at 839.

In this case, Plaintiffs allege that the Defendants entered into an agreement "with the objective of legally incapacitating and physically removing Ronald Sanders from Christian County, effectively kidnapping him, through an abuse of the judicial and social services processes," in violation of Mr. Sanders' Fourth and Fourteenth Amendment rights and Ms. Sanders' Fourteenth Amendment rights. [DN 51 at 800]. Plaintiffs believe the plan to make Mr. Sanders a ward of the state "originated with the prosecutors, who were frustrated that they could not convict him of a crime due to his incompetency to stand trial." *Id.* at 801. They claim Ms. Holland joined this conspiracy after Mr. Foster informed her that the Christian County Attorney's office planned to file for emergency guardianship. *Id.* Additionally, Plaintiffs assert that Ms. Monroe and Ms. Perry took substantial steps in furtherance of the conspiracy by exercising physical restraint and control over Mr. Sanders while he was a ward of the state. *Id.* at 802.

More specifically, Plaintiffs contend Ms. Holland's involvement in the conspiracy is evidenced by (1) her email to Mr. Coyer notifying him that Mr. Sanders may require placement at PMHC if the court granted the County Attorney's guardianship petition; (2) Ms. Leamy's affidavit

7

stating that Mr. Sanders was an immediate danger to himself and others; and (3) Ms. Holland's memos recording her contacts with the County Attorney's office and Mr. Coyer. [DN 103 at 1367]. Moreover, Plaintiffs claim the fact that "Monroe was present in the courtroom with other co-conspirators, who sat in the gallery, upon the direction of Holland, [] proves that Monroe shared an agreement with Holland that the hearing take place and the appointment occur." *Id.* at 1369. Finally, Plaintiffs' argue Ms. Monroe and Ms. Perry's agreement to exercise physical control over Mr. Sanders is illustrated by Ms. Perry's execution of instruments on Mr. Sanders' behalf, in excess of the scope of her powers as guardian. *Id.* at 1370.

In their Motion for Summary Judgment, Defendants argue that "Plaintiffs have failed to plausibly allege the CHFS Defendants shared the same alleged conspiratorial objective as the other defendants." [DN 93-1 at 1051]. Rather, Defendants claim their actions were dictated by court orders and Kentucky law. *Id.* at 1051–52. Specifically, KRS 387.530 states that "any interested person" may file a petition for guardianship. *Id.* at 1054. Once filed, the district court may appoint "any suitable person or any entity" as guardian, including CHFS, if no other suitable person is available. *Id.* Here, the County Attorney's office submitted a petition for guardianship of Mr. Sanders; at the guardianship hearing, the district court judge determined that Ms. Leamy and CHFS were appropriate guardians. *Id.* As guardian, CHFS workers coordinated with PMHC to ensure that Mr. Sanders' had appropriate housing. *Id.* at 1056. Thus, Defendants argue, this coordination illustrates their responsibility in performing their job duties, not circumstantial evidence of a conspiracy. *Id.*

The Court finds that the facts, examined in the light most favorable to Plaintiffs, do not amount to a claim of civil rights conspiracy under 42 U.S.C. § 1985(3). Plaintiffs have not pointed to any evidence that tends to prove even the first factor, a conspiracy involving Ms. Holland, Ms.

8

Monroe, and Ms. Perry. Rather, the facts indicate that these Defendants performed their duties as CHFS employees to ensure that Mr. Sanders' physical and emotional needs were met after the district court judge granted the County Attorney's petition for guardianship. The fact that Ms. Holland knew of the County Attorney's plans to seek guardianship before the hearing does not demonstrate that she was involved in a conspiracy. Rather, Ms. Holland's contact with Mr. Foster and Mr. Coyer illustrates reasonable and necessary planning for Mr. Sanders' needs. Moreover, there is no evidence that Ms. Holland, or any other CHFS employee, had any knowledge regarding the contents of Ms. Leamy's petition or affidavit, or of the County Attorney's office's alleged motivations in seeking guardianship. As for Ms. Monroe, the fact that she was present during the guardianship hearing does not demonstrate she was involved in a conspiracy. Finally, while Ms. Perry may have exceeded the powers authorized by the guardianship order by executing instruments on behalf of Mr. Sanders, there are no facts to suggest she had any agreement, or even any contact with any of the remaining defendants involved in the alleged conspiracy. Accordingly, Plaintiffs have not demonstrated that the CHFS Defendants were involved in a conspiracy against Mr. Sanders and Ms. Sanders and therefore, they are entitled to judgment as a matter of law.[1]

## II.     42 U.S.C. § 1983

Second, the Amended Complaint alleges that Defendants conspired against Plaintiffs in violation of 42 U.S.C. § 1983. [DN 51 at 808]. A civil conspiracy under 42 U.S.C. § 1983 is "an agreement between two or more persons to injure another by unlawful action." *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007). "To successfully plead a civil conspiracy, Plaintiffs must allege that '(1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the

---

[1] Since Plaintiffs failed to establish that the CHFS Defendants were involved in a conspiracy, the Court need not address Defendants' additional arguments in support of summary judgment, including judicial immunity, the *Rooker-Feldman* doctrine, and qualified immunity.

9

Plaintiffs of their constitutional rights, and (3) an overt act was committed." *Pritchard v. Hamilton Twp. Bd. Of Trustees*, 424 F. App'x 492, 508 (6th Cir. 2011) (quoting *Revis*, 489 F.3d at 290). For the reasons stated in the prior section, Plaintiffs have not demonstrated that Ms. Holland, Ms. Monroe, and Ms. Perry were involved in a conspiracy against Mr. and Ms. Sanders. Thus, Defendants are entitled to a judgment as a matter of law as to the 42 U.S.C. § 1983 claim.

### III. False Imprisonment

Count Four of the Amended Complaint alleges Defendants falsely imprisoned Mr. Sanders by detaining him against his will, without a claim of reasonable justification, authority, or privilege during the period of time Mr. Sanders was in state guardianship. [DN 51 at 812]. "Kentucky cases define false imprisonment as being any deprivation of the liberty of one person by another or detention for however short a time without such person's consent and against his will, whether done by actual violence, threats or otherwise. Furthermore, false imprisonment requires that the restraint be wrongful, improper, or without a claim of reasonable justification, authority or privilege." *Banks v. Fritsch,* 39 S.W.3d 474, 479 (Ky. Ct. App. 2001) (citing to *Grayson Variety Store, Inc. v. Shaffer,* 402 S.W.2d 424 (Ky. 1960); *Great Atl. & Pac. Tea Co. v. Billups,* 69 S.W.2d 5 (Ky. 1934); *Ford Motor Credit Co. v. Gibson,* 566 S.W.2d 154 (Ky. Ct. App. 1977); *J.J. Newberry Co. v. Judd,* 82 S.W.2d 359 (Ky. 1935); *Louisville & Nashville R.R. Co. v. Mason,* 251 S.W. 184 (Ky. 1923)).

Defendants argue the false imprisonment claim fails as a matter of law because Mr. Sanders was "placed into state guardianship under the legal authority of a court order." [DN 93-1 at 1063]. They cite no false imprisonment cases arising from guardianship proceedings, nor has the Court been able to identify any such cases. However, false imprisonment claims against law enforcement officers are fairly common and may offer guidance in the current case. In Kentucky, a law

enforcement officer is "liable for false imprisonment unless he or she enjoys a privilege or immunity to detain an individual." *Dunn v. Felty*, 226 s.W.3d 68, 71 (Ky. 2007). "Two common examples of a law enforcement officer's privilege to detain an individual are (1) an arrest pursuant to a warrant or (2) an arrest without a warrant in which the officer has probable cause, that is, reasonable objective grounds to believe that a crime was committed and that the plaintiff committed it." *Id.* (citation omitted). "The common element of both examples is that the detention was lawful as it occurred pursuant to legal process." *Id.* Thus, just as a police officer is privileged to detain an individual pursuant to legal process, the Court finds that CHFS officials are shielded from false imprisonment claims when taking guardianship over an individual pursuant to a court order.

In this case, Judge Cotthoff entered an order appointing Ms. Leamy and CHFS as Mr. Sanders' guardians, thereby removing Mr. Sanders' right to determine his living arrangements. Additionally, the judge entered an order of transport authorizing the sheriff to transport Mr. Sanders to PMHC in Madisonville. Judge Cotthoff also determined that Mr. Sanders should reside at PMHC until his disability hearing on April 4, 2018. Given that CHFS was appointed Mr. Sanders' guardian and the court ordered Mr. Sanders to remain at PMHC pursuant to legal process, the Defendants had reasonable justification and authority to hold Mr. Sanders at PMHC pending his disability hearing. Therefore, Plaintiffs' claim for false imprisonment fails as a matter of law.

IV. **Outrage**

Count Four of the Amended Complaint also alleges that Defendants' conduct "was so atrocious and intolerable that it exemplifies the tort of outrage." [DN 51 at 813]. Defendants argue their conduct was not outrageous—they were merely following a court order to take Mr. Sanders into state guardianship. [DN 93-1 at 1064]. In response, Plaintiffs claim Ms. Sanders "endured

months of forced separation from her severely disabled son" which constitutes outrage under state law. [DN 103 at 1378].

Kentucky courts have "set a high threshold for outrage claims," *Stringer v. Wal-Mart Stores, Inc.,* 151 S.W.3d 781, 791 (Ky. 2004). "[A] claim for the tort of outrage requires the plaintiff to prove conduct which is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Humana of Ky., Inc. v. Seitz,* 796 S.W.2d 1, 3 (Ky. 1990) (quoting Restatement (Second) of Torts § 46 cmt.d (1965)). The Kentucky Supreme Court reasoned in *Kroger Co. v. Willgruber* that "citizens in our society are expected to withstand petty insults, unkind words and minor indignities. Such irritations are a part of normal, every day life and constitute no legal cause of action. It is only outrageous and intolerable conduct which is covered by this tort." 920 S.W.2d 61, 65 (Ky. 1996).

Viewing the facts in a light most favorable to the Plaintiffs, the Court concludes that Ms. Holland, Ms. Monroe, and Ms. Perry's conduct was not so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency. Instead, the facts demonstrate that while working for CHFS, the Defendants followed the district court's orders and Kentucky law to assume state custody of Mr. Sanders and organized his transportation to a mental health facility. This conduct is not "utterly intolerable in a civilized community," and thus, the claim of outrage must be dismissed.

## CONCLUSION

For the reasons stated herein, **IT IS HEREBY ORDERED**: Defendants' Motion for Summary Judgment, [DN 93], is **GRANTED**. Plaintiffs' 42 U.S.C. § 1985; 42 U.S.C. § 1983; false imprisonment; and outrage claims against Defendants Holland, Monroe, and Perry shall be

dismissed. However, Plaintiffs' abuse of process and assault and battery claims may continue as they were not addressed by Defendants in their Motion for Summary Judgment.

**IT IS SO ORDERED.**

**Thomas B. Russell, Senior Judge**
**United States District Court**

March 2, 2020

CC: Attorneys of Record