UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:19-CV-23-TBR

LEONIA N. SANDERS, *et al.*,                                                    PLAINTIFFS

v.

CITY OF PEMBROKE, *et al.*,                                                    DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on two motions. First, Plaintiff Leonia Sanders, individually, and Leonia Sanders, the parent and guardian of Ronald Sanders, filed a Motion to Alter or Amend Judgment. [DN 110]. Second, Plaintiffs filed a Motion for Relief from Judgment or Order. [DN 111]. Defendants City of Pembroke, Judy Peterson, and Mark Reid responded to both motions, [DN 120], and Plaintiffs replied, [DN 123]. These matters are ripe for adjudication. For the reasons stated herein, the Court's prior Memorandum Opinions, [DN 107, 113], are AMENDED; Plaintiffs' Motion to Alter or Amend Judgment, [DN 110], is DENIED; and Plaintiffs' Motion for Relief from Judgment or Order, [DN 111], is GRANTED in part and DENIED in part.

## BACKGROUND

Plaintiff Leonia Sanders lives in Pembroke, Kentucky with her twenty-seven-year-old son, Ronald. [DN 51 at 771–72]. Mr. Sanders suffers from mental illness and Ms. Sanders worked with the Kentucky Cabinet for Health and Family Services and Pennyroyal Mental Health Center to manage her son's medications. *Id.* However, Ms. Sanders claims that these institutions "betrayed her and Ronald, and with the help of county and municipal law enforcement, [] conspired to kidnap her son" by making him a ward of the state. *Id.* at 772. On February 13, 2019, Plaintiffs filed the current action against fourteen individuals and institutions alleging violations of 42 U.S.C. § 1985

1

and 42 U.S.C. § 1983, defamation, abuse of process, assault, battery, false imprisonment, false arrest, and outrage. [*See* DN 51]. A full recitation of the alleged facts is available in the Court's prior Memorandum Opinions. [DN 107, 113].

On January 28, 2020, the Court entered a Memorandum Opinion and Order granting Defendants City of Pembroke, Pembroke Mayor Judy Peterson, and Police Chief Mark Reid's ("Pembroke Defendants") Motion to Dismiss Plaintiffs' First Amended Complaint. [DN 107]. On February 25, 2020, Plaintiffs filed a Motion to Alter or Amend the Court's ruling pursuant to Federal Rule of Civil Procedure 59(e). [DN 110]. On March 2, 2020, Plaintiffs filed a second Motion for Relief from Judgment or Order on the basis of newly discovered evidence. [DN 111]. In their reply memorandum, Plaintiffs acknowledge that both motions should be construed as motions for relief pursuant to Federal Rule of Civil Procedure 54(b) given that the Court's order granting the Pembroke Defendants' motion to dismiss was an interlocutory order, not a final judgment. [DN 123 at 1614].

On March 4, 2020, the Court also granted Defendants Heather Holland, Lindee Monroe, and Rebecca Perry's ("CHFS Defendants") Motion to Dismiss, or in the alternative, Motion for Summary Judgment. [DN 113]. In addition to the instant motions to alter judgment, Defendants Pennyroyal Mental Health Center, Reba Pleasant, and Janet Tolliver filed a motion to dismiss, [DN 105]; the CHFS Defendants filed a motion for summary judgment on remaining claims, [DN 115]; Defendants Rick Burgess, Lincoln Foster, Eddie Frye, and Maureen Leamy filed a motion to dismiss, [DN 122]; and Defendant Susan Redmond-Vaught filed a motion to dismiss, [DN 124].

## LEGAL STANDARD

"District courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez v.*

*Tennessee Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004); *see also Leelaneu Wine Cellars, Ltd. v. Black & Red, Inc.*, 118 F. App'x 942, 946 (6th Cir. 2004) (noting that "[a]s long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient."). "[C]ourts will find justification for reconsidering interlocutory orders whe[re] there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct clear error or prevent manifest injustice." *Louisville/Jefferson Cnty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009) (internal quotation marks omitted).

## DISCUSSION

### I.      Failure to Allege § 1983 Conspiracy

Count Two of the Amended Complaint alleges "42 U.S.C § 1983 and *Monell* violations of Ronald Sanders' Fourth and Fourteenth Amendment rights." [DN 51 at 808]. The Amended Complaint does not allege a § 1983 conspiracy to violate Mr. Sanders' Fourth and Fourteenth Amendment rights. *See id.* However, in response to the Pembroke Defendants' Motion to Dismiss,[1] Plaintiffs reframed Count Two as a § 1983 conspiracy to violate Mr. Sanders' rights, in essence raising a new cause of action. [DN 95 at 1198]. Since filing this response, Plaintiffs have continued to argue that the Defendants committed a § 1983 conspiracy. [*See e.g.,* DN 103; 106; 110; 111; 125; 126].

Although Count Two of the Amended Complaint did not allege a § 1983 conspiracy, the Court addressed this claim in its prior Memorandum Opinions. [DN 107, 113]. Therefore, pursuant

---

[1] The Pembroke Defendants did not address a § 1983 conspiracy in their Motion to Dismiss. [DN 88]. However, when the CHFS Defendants filed their motion to dismiss or in the alternative, motion for summary judgment, they argued that Count Two should be dismissed because they did not participate in a § 1983 conspiracy to violate Mr. Sanders' rights. [DN 93-1 at 1052].

to the Court's authority both under common law and Rule 54(b), it will reconsider its January 28th Memorandum Opinion dismissing Count Two against the Pembroke Defendants and its March 4th Memorandum Opinion dismissing Count Two against the CHFS Defendants in order to properly evaluate Plaintiffs' claims as alleged in the Amended Complaint.

### A.  § 1983 Claim Against Mayor Peterson and Chief Reid

Count Two of the Amended Complaint alleges that Defendants Peterson and Reid violated Mr. Sanders' Fourth and Fourteenth Amendment rights by using excessive force and effectuating the unreasonable seizure and arrest of Mr. Sanders on June 26, 2017, October 23, 2017, and February 13, 2018. [DN 51 at 808]. The Pembroke Defendants filed a motion to dismiss this claim pursuant to Federal Rule of Civil Procedure 12(b)(6). [DN 88]. In order to survive a motion to dismiss under Rule 12(b)(6), a party must "plead enough 'factual matter' to raise a 'plausible' inference of wrongdoing." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In order to state a claim pursuant to § 1983, "[a] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In this case, Plaintiffs claim that Mayor Peterson and Chief Reid were acting under the color of state law when they used excessive force and effected the unreasonable seizure and arrest of Mr. Sanders in violation of his Fourth Amendment rights.

The Fourth Amendment to the Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.

"A claim of excessive force under the Fourth Amendment requires that a plaintiff demonstrate that a seizure occurred, and that the force used in effecting the seizure was objectively unreasonable." *Rodriguez v. Passinault*, 637 F.3d 675, 680 (6th Cir. 2011). "A seizure triggering the Fourth Amendment's protections occurs only when government actors have, by means of physical force or show of authority, in some way restrained the liberty of a citizen." *Slusher v. Carson*, 540 F.3d 449, 454 (6th Cir. 2008). "Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 1877, 64 L.Ed. 2d 497 (1980).

However, "'[s]eizure' alone is not enough for § 1983 liability; the seizure must be 'unreasonable.'" *Brower v. Cty. of Inyo*, 489 U.S. 593, 599 (1989); *Byars v. United States*, 273 U.S. 28, 33 (1927) ("The Fourth Amendment was adopted in view of long misuse of power in the matter of searches and seizures both in England and the colonies."). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (U.S. 1989) (citation omitted). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396.

The Amended Complaint does not allege that Mayor Peterson or Chief Reid arrested or otherwise seized Mr. Sanders on June 26, 2017, October 23, 2017, or February 13, 2018. On June

26, 2017, the Amended Complaint alleges that Deputy Frye arrested Mr. Sanders. [DN 51 at 779]. On October 23, 2017, Chief Reid cited Mr. Sanders for Third Degree Criminal Trespassing; however, Plaintiffs themselves describe the citation as a "unarrestable and unjailable violation." *Id.* at 780. Moreover, Plaintiffs do not allege that Chief Reid arrested or otherwise seized Mr. Sanders on this occasion. Finally, on February 13, 2018, Deputy Burgess and Lieutenant Myers arrested Mr. Sanders. *Id.* at 791. Since the Amended Complaint failed to plead enough factual matter to raise a plausible inference that Mayor Peterson or Chief Reid unlawfully seized or arrested Mr. Sanders in violation of his Fourth Amendment rights, Count Two of the Amended Complaint must be dismissed.

### B. § 1983 Claim Against the CHFS Defendants

Count Two of the Amended Complaint alleges that Defendants Holland, Monroe, and Perry violated Mr. Sanders' procedural and substantive due process rights. *Id.* at 808. The CHFS Defendants filed a motion to dismiss the complaint, or in the alternative, motion for summary judgment, in which they relied on exhibits relating to Mr. Sanders' state court proceedings. [DN 93]. Although the Court could have taken judicial notice of the state court proceedings, *see Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980), Plaintiffs chose to respond to the CHFS Defendants' motion as one for summary judgment and included additional exhibits relating to events outside of the state court proceedings. [DN 103]. Accordingly, the Court analyzed the motion pursuant to Federal Rule of Civil Procedure 56. The Court will address Plaintiffs' procedural due process and substantive due process claims against the CHFS Defendants pursuant to the same standard.

### 1. Procedural Due Process

First, Count Two states that Defendants Holland, Monroe, and Perry, among others, while acting under the color of state law, violated Mr. Sanders' procedural due process rights, "which directly and proximately caused him to suffer deprivations of liberty, including the aforementioned guardianship hearings and orders, three arrests and criminal prosecutions, and second and third admissions to WSH." [DN 51 at 808]. It appears that Plaintiffs' procedural due process claim rests on Plaintiffs' allegation that they were not notified of the guardianship proceeding on February 13, 2018. *See id.* at 805 (Mr. Sanders' procedural due process rights were "violated when the February 13 hearing took place without his being served a summons and copy of the petition, or otherwise receiving notice of the hearing. This constitutional violation deprived him of the opportunity to be heard and resulted in a deprivation of liberty.").

"In order to establish a procedural due process claim, a plaintiff must show that (1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest." *Women's Med. Prof'l Corp. v. Baird,* 438 F.3d 595, 611 (6th Cir. 2006). "Due process requires notice of the charges and a meaningful opportunity to contest the evidence." *O'Neill v. Louisville/Jefferson Cty. Metro Gov't*, 662 F.3d 723, 733 (6th Cir. 2011) (quoting *Morrison v. Warren,* 375 F.3d 468, 473 (6th Cir.2004)). "Notice, of course, is one of the most fundamental aspects of due process." *Id.* (quoting *Flaim v. Med. Coll. of Ohio,* 418 F.3d 629, 638 (6th Cir. 2005)).

Here, Plaintiffs claim they were not notified that the state court would be conducting an emergency guardianship hearing on February 13, 2018. Under Kentucky law, upon the filing of a complaint or other initiating document, the clerk issues a summons and, at the direction of the initiating party, may mail a copy of the summons and complaint to the person to be served at the

7

address set forth in the caption or at the address set forth in written instructions furnished by the initiating party. Ky R. Civ. P. 4.01. The Amended Complaint alleges that Defendant Maureen Leamy initiated the guardianship proceeding by filing a Petition to Determine if Disabled and an Application for Appointment of Fiduciary for Disabled Persons. [DN 51 at 787]. Furthermore, Plaintiffs claim that "[n]either Foster nor Leamy prepared, served, or directed the clerk of court to serve a summons and copy of the petition on Ronald Sanders, and they failed to instruct the clerk by what method to send the summons, as required of the petitioner under Kentucky law." *Id.* In contrast, the Amended Complaint does not allege that the CHFS Defendants initiated the guardianship proceeding, nor does it claim that the CHFS Defendants had an independent duty to inform or notify Plaintiffs of the proceeding pursuant to Kentucky law.

This case in similar to *Pittman v. Cuyahoga County Department of Children and Family Services*, in which the plaintiff maintained that a social worker interfered with his right to notice of a child custody proceeding. 640 F.3d 716 (6th Cir. 2011). The Sixth Circuit found that the social worker did not violate the plaintiff's procedural due process rights because pursuant to Ohio law, it was the juvenile court's responsibility to ensure the plaintiff received proper notice of the proceedings and the social worker had no independent duty to keep the plaintiff informed. *Id.* at 730; *see also Kolley v. Adult Protective Servs.*, 725 F.3d 581, 586–87 (6th Cir. 2013) ("[I]t is not clear which of Defendants, if any, had any duty to notify Joseph Kolley of the petition or of Jena Kolley's removal."). Under Kentucky law, only the clerk and initiating party are responsible for providing notice of a proceeding. Given that the CHFS Defendants do not fall into either category, Plaintiffs' claim that the CHFS Defendants violated Mr. Sanders' procedural due process rights by failing to provide notice of the guardianship proceedings must be dismissed.

### 2. Substantive Due Process

### i.    Quasi-Judicial Immunity

Count Two of the Amended Complaint alleges that the CHFS Defendants violated Mr. Sanders' substantive due process right "to live with, enjoy the affections of, and be cared for by, his mother Leonia Sanders, in that Ronald Sanders is incapable of making his own decisions, unable to live independently, or be economically self-sufficient, such that his relationship with his mother implies a fundamental right inherent in the concept of ordered liberty." [DN 51 at 808]. In their motion to dismiss, or alternatively, motion for summary judgment, the CHFS Defendants argue that Plaintiffs' claims are barred by quasi-judicial immunity. [DN 93-1 at 1057].

Under the doctrine of judicial immunity, judges are entitled to immunity arising out of the performance of their judicial functions. *Mireles v. Waco*, 502 U.S. 9 (1991); *Forrester v. White*, 484 U.S. 219 (1988); *Dennis v. Sparks*, 449 U.S. 24 (1980). "[A]bsolute judicial immunity has been extended to non-judicial officers who perform 'quasi-judicial' duties." *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994) (citing *Joseph v. Patterson,* 795 F.2d 549, 560 (6th Cir. 1986), *cert. denied,* 481 U.S. 1023, 107 S.Ct. 1910, 95 L.Ed.2d 516 (1987); *Johnson v. Granholm,* 662 F.2d 449 (6th Cir. 1981), *cert. denied,* 457 U.S. 1120, 102 S.Ct. 2933, 73 L.Ed.2d 1332 (1982)). Quasi-judicial immunity applies "to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Id.* (citing *Scruggs v. Moellering,* 870 F.2d 376 (7th Cir.), *cert. denied,* 493 U.S. 956, 110 S.Ct. 371, 107 L.Ed.2d 357 (1989)). In order to determine whether an official is entitled to quasi-judicial immunity, courts "look to the nature of the function performed, not the identity of the actor who performed it." *Id.* (citations omitted).

For example, in *Bush v. Rauch*, a probate court official determined that a juvenile criminal offender should be held in pre-trial detention at a non-secure detention home. *Id.* at 844. Defendant

Brad Campbell, another probate court administrator, executed the juvenile's placement in the detention home by conducting an initial assessment procedure based on the findings in the court order. *Id.* at 844–45. Shortly after the juvenile was placed in the home, he assaulted and injured one of the home's operators, who then filed suit against the probate court officials. *Id.* The district court found that Campbell was protected by quasi-judicial immunity because he was "acting as an arm of the court in carrying out the court order" of placing the juvenile in the detention home. *Id.* at 847. The Sixth Circuit agreed, finding that "enforcing or executing a court order is intrinsically associated with a judicial proceeding." *Id.* (citing *Patterson v. Von Riesen,* 999 F.2d 1235, 1240–41 (8th Cir.1993) (warden); *Coverdell v. Department of Social and Health Servs.,* 834 F.2d 758 (9th Cir.1987) (social worker); *Henry v. Farmer City State Bank,* 808 F.2d 1228 (7th Cir.1986) (sheriff); *Tarter v. Hury,* 646 F.2d 1010 (5th Cir.1981) (court clerks)). Moreover, the Court emphasized:

> [O]fficials must be permitted to rely upon a judge's findings and determinations to preserve the integrity of the court's authority and ability to function. It does not seem logical to grant immunity to a judge in making a judicial determination and then hold the official enforcing or relying on that determination liable for failing to question the judge's findings. This would result in the official second-guessing the judge who is primarily responsible for interpreting and applying the law.

*Id.* at 848.

In this case, the CHFS Defendants argue that "guardian workers who take custody of an incompetent disabled adult [] when directly ordered by a disability judge should [] be similarly shielded from suit by quasi-judicial immunity." [DN 93-1 at 1059]. The central issue in determining whether the CHFS Defendants are entitled to such immunity is whether their act of placing Mr. Sanders in state custody at PMHC could be considered judicial in nature. *See Bush*, 38 F.3d at 847. Here, the state court judge entered an order appointing CHFS as Mr. Sanders' emergency guardian with powers and duties relating to his living arrangements, consenting to

medical procedures, and handling financial responsibilities. [DN 94-1 at 1080]. Additionally, the judge ordered the Christian County Sheriff's Department to transport Mr. Sanders to PMHC where he would reside until his disability trial. *Id.* at 1082. Thus, the CHFS Defendants' decision to act as Mr. Sanders' emergency guardians and to house him at PMHC were in direct response to the state court order. As previously noted, the Sixth Circuit has held that "executing a court order is intrinsically associated with a judicial proceeding." *See Bush*, 38 F.3d at 847*; see also Heithcock v. Tennessee Dep't of Children's Servs.*, No. 3:14-CV-2377, 2015 WL 4879107, at *9 (M.D. Tenn. Aug. 14, 2015) (holding that social worker's actions concerning removal of child from home "were undertaken at the direction of orders of the Juvenile Court" and thus, the social worker was entitled to absolute quasi-judicial immunity). Accordingly, the CHFS Defendants enjoy quasi-judicial immunity for their execution of the state court's emergency guardianship order.

When a defendant is entitled quasi-judicial immunity, a plaintiff cannot sustain his claim unless he alleges "that the [official] engaged in conduct that exceeds the scope of the [judicial order]." *Heithcock*, 2015 WL 4879107, at *9 (quoting *Cooper v. Parrish*, 203 F.3d 937, 948 (6th Cir. 2000)). In their response to the motion to dismiss, or in the alternative, motion for summary judgment, Plaintiffs argue that the CHFS Defendants are not entitled to quasi-judicial immunity because they violated the scope of the state court order. [DN 103 at 1372]. First, the Court notes that Plaintiffs do not present any specific facts or argument that Defendants Holland or Monroe exceeded the scope of the state court order. *Id.* Thus, to the extent that Plaintiffs' substantive due process claims against Ms. Holland and Ms. Monroe are based on their execution of the state court's emergency guardianship order, they are entitled to quasi-judicial immunity and the claims against them shall be dismissed.

However, Plaintiffs contend that Defendant Perry exceeded the scope of the state court order by executing authorization forms on Mr. Sanders' behalf while he was hospitalized at WSH. [DN 103 at 1373]. The record reveals that on February 13, 2018, the state court judge appointed CHFS as Mr. Sanders' emergency fiduciary and determined that Mr. Sanders would reside at PMHC until his disability trial on April 4, 2018. [DN 94-1 at 1083]. The order defined the scope of the emergency fiduciaries' powers and duties as follows: (1) determining living arrangements; (2) consenting to medical procedures; and (3) handling financial responsibilities. [DN 103-6 at 1389]. The order did not give CHFS the power to (1) dispose of Mr. Sanders' property; (2) execute instruments; or (3) enter into contractual relationships. *Id.*

When police attempted to transport Mr. Sanders to PMHC in accordance with the court order, he ran away and was ultimately arrested and charged with fleeing/evading police. [DN 51 at 792]. On February 15, the state court judge signed an Order for Examination and Treatment to determine Mr. Sanders' competency to stand trial. *Id.* Mr. Sanders was then admitted to WSH for an in-custody evaluation, at which point Plaintiffs claim he signed eight authorizations, releases, consent forms, or waivers. *Id.* at 795. Additionally, Plaintiffs assert that Ms. Perry signed six other forms as Mr. Sanders' emergency guardian. *Id.* In support of this claim, Ms. Sanders filed an affidavit stating that she recognized Ms. Perry's signature on the following documents: 1) notice of privacy waiver; 2) waiver of responsibility for medical treatment; 3) personal valuables wavier of responsibility; 4) patients' rights acknowledgement; 5) general authorizations consent to treatment; and 6) medication informed consent for guardians. [DN 103-8 at 1392].

Plaintiffs claim that Ms. Perry exceeded the scope of the guardianship order by signing these six documents on behalf of Mr. Sanders. Specifically, they argue that they have demonstrated the existence of an "issue of material fact supporting their claim that Perry acted without legal

authority, because it is not clear that each of the six authorizations or waivers were (1) not legal instruments; (2) not contracts; or (3) not dispositions of property." [DN 103 at 1372]. In reply, the CHFS Defendants characterize Plaintiffs' argument as a "hail Mary pass." [DN 104 at 1435]. Moreover, they argue these releases were appropriately signed by Ms. Perry as the patient's legal guardian. *Id.*

The Court agrees with the Defendants. Plaintiffs' claims that Ms. Perry exceeded the scope of the state court order are conclusory and lack legal support. As an emergency guardian, Ms. Perry was given the power to make decisions regarding Mr. Sanders' medical procedures. Shortly thereafter, the same court ordered Mr. Sanders to undergo a medical evaluation in order to determine his competency to stand trial. Thus, it appears that Ms. Perry's decision to sign six documents on behalf of Mr. Sanders so that he could be admitted to WSH for a psychological examination fall within the scope of her power to make decision regarding Mr. Sanders' medical procedures. Accordingly, the Court finds that Plaintiffs have failed to raise a genuine issue of fact as to whether Ms. Perry exceeded the scope of the guardianship order. Therefore, Ms. Perry, in addition to the other CHFS Defendants, is entitled to quasi-judicial immunity as to Plaintiffs' substantive due process claim for her actions as Mr. Sanders' emergency guardian.

## ii.   Qualified Immunity

Alternatively, the CHFS Defendants argue they are entitled to qualified immunity as to Plaintiffs' substantive due process claims. Under federal qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "Qualified immunity also balances two important interests—

the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009). Determining whether defendants are entitled to qualified immunity involves two questions: First, based on applicable law and the facts viewed in the light most favorable to the plaintiff, has a constitutional violation occurred? *Bell v. Johnson*, 308 F.3d 594, 601 (6th Cir. 2002). Second, if the answer to the first question is yes, was the constitutional right "clearly established" at the time of violation. *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). "These two steps may be addressed in any order." *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013) (citing *Pearson*, 555 U.S. at 236, 129 S.Ct. 808.) "But both must be answered in the affirmative for the case to go to a factfinder to decide if each officer's conduct in the particular circumstances violated a plaintiff's clearly established constitutional rights. If either one is not satisfied, qualified immunity will shield the officer from civil damages." *Id.*

"The ultimate burden of proof is on the plaintiff to show that the defendants are not entitled to qualified immunity." *Washington v. Newsome*, 977 F.2d 991, 995 (6th Cir. 1992) (citing *Wegner v. Covington*, 933 F.2d 390, 392 (6th Cir. 1991)). The plaintiff's burden extends to both prongs of the qualified immunity analysis—he must plausibly claim that a constitutional right has been violated and that the right was clearly established.

First, the Court will consider whether the CHFS Defendants violated Plaintiffs' substantive due process right to familial association. "Substantive due process claims may be loosely divided into two categories: (1) deprivations of a particular constitutional guarantee; and (2) actions that 'shock the conscience.'" *Pittman*, 640 F.3d at 728 (citing *Valot v. Se. Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1228 (6th Cir. 1997) (citing *Pusey v. City of Youngstown*, 11 F.3d 652, 656 (6th

14

Cir. 1993) and *Mansfield Apartment Owners Ass'n v. City of Mansfield,* 988 F.2d 1469, 1474 (6th Cir. 1993)). "When it is the former, 'substantive due process provides that, irrespective of the constitutional sufficiency of the processes afforded, government may not deprive individuals of fundamental rights unless the action is necessary and animated by a compelling purpose.'" *Young v. Vega*, 574 F. App'x 684, 690 (6th Cir. 2014) (quoting *Pittman*, 640 F.3d at 728–29 (quoting *Bartell v. Lohiser,* 215 F.3d 550, 557–58 (6th Cir. 2000))).

The CHFS Defendants rely on *Pittman* to support their qualified immunity argument. In that case, a father brought a § 1983 claim against the local Department of Children and Family Services and a social worker after his son was removed from his mother's custody. *Pittman*, 640 F.3d at 718. Specifically, Pittman claimed that the defendants violated his substantive due process rights by depriving him of his fundamental liberty interest in family integrity by making misrepresentations regarding Pittman's "status and attitude toward parenting" while "participating in agency decisions concerning [the child]." *Id.* at 722 (internal quotation marks omitted). The Sixth Circuit determined that the social worker could not "be liable for violating Pittman's substantive due process rights because, to the extent that Pittman suffered a deprivation of his fundamental right to family integrity, that deprivation was perpetrated by the juvenile court, not" the social worker. *Id.* at 729. The Court concluded: "Because the juvenile court has the ultimate decisionmaking power with respect to placement and custody, it alone could deprive Pittman of his fundamental right. Therefore, [the social worker's] conduct did not violate Pittman's substantive due process rights, and she ha[d] qualified immunity against that claim." *Id.*

Similarly, in *Kolley*, a nineteen-year-old woman with developmental disabilities was removed by court order from her home and placed in a group foster facility after she told her teacher that her mother hit her. *Kolley*, 725 F.3d at 583. The Kolleys filed suit against several

individuals and organizations that took part in investigating the abuse allegations alleging that the defendants deprived them of their right to familial association and their parental liberty interests in violation of the First and Fourteenth Amendments. *Id.* at 585. Specifically, the Kolleys claimed defendants "petitioned for an ex parte order when no emergency existed;" "falsely testified about Joseph Kolley's actions and statements; and took advantage of Jena's disability to make allegations against Suzanne Kolley." *Id.* The Court concluded that *Pittman* controlled and noted that under Michigan law, state courts have the ultimate decision-making power on custody and guardian appointments for developmentally disabled persons. *Id.* at 586. The Court stated that "[e]ach of the allegations in the Kolleys' amended complaint have to do with the defendants' actions *before* the court decided to deny Joseph Kolley visitation rights." *Id.* Thus, despite any alleged misrepresentations the social worker made during the state court proceeding, "the court was the final decision-maker regarding Jena's custody decisions" and "the Kolleys' substantive due process claim fails." *Id.*; *see also Maley v. Welch*, No. 16-10744, 2018 WL 1456210, at *16 (E.D. Mich. Mar. 23, 2018) (collecting cases) (noting that the types of deprivation of fundamental rights that substantive due process is concerned with "can only be committed by the court tasked with making the ultimate custody determination, rather than the state agents that participate in the proceedings that lead to that determination"); *Young*, 574 F. App'x at 690 ("As in *Pittman* and *Kolley,* Vega's alleged misrepresentations preceded that deprivation and the temporary loss of custody was a deprivation perpetrated by the juvenile court alone.").

Likewise, Kentucky law provides state courts with the power to appoint an individual or agency to serve as a limited guardian upon a finding of a danger or serious impairment to the health or safety of an individual. Ky. Rev. Stat. Ann. § 387.740. Therefore, the state court, not the CHFS Defendants, was responsible for making the ultimate determination as to whether Mr. Sanders

would be placed in CHFS's custody until his disability hearing. Thus, to the extent that Plaintiffs allege that the CHFS Defendants' actions taken before the state court entered the guardianship order deprived them of their constitutional right to familial association, their substantive due process claim fails.[2]

## II.     Motion to Alter or Amend Judgment

Next, the Court will address Plaintiffs' Motion to Alter or Amend the January 28th Memorandum Opinion and Order. [DN 110]. Plaintiffs seek to alter or amend the dismissal of (1) the federal and state law false arrest and (2) due process conspiracy claims against Chief Reid, and (3) the *Monell* municipal liability claim. *Id.* at 1543. Although Plaintiffs' arguments are largely negated by the fact that Plaintiffs failed to plead a § 1983 conspiracy in the Amended Complaint, the Court will address each argument in turn.

### A.  False Arrest and Conspiracy to Arrest Mr. Sanders Without Probable Cause

First, Plaintiffs address Chief Reid's alleged involvement in a conspiracy to arrest Mr. Sanders without probable cause on July 26, 2017. *Id.* at 1545. They assert that the Court failed to give weight to the alleged fact that Deputy Frye contacted Chief Reid after arresting Mr. Sanders and stated, "I've got him." *Id.* at 1546. Plaintiffs claim that this phone call implies that the two individuals shared a prior understanding regarding Mr. Sanders' arrest and tends to prove that

---

[2] The CHFS Defendants also argue that Plaintiffs failed to establish the second prong of the qualified immunity test because the right of an adult child to have a constitutionally protected right of familial association with their parent or vice versa is not clearly established. In support, Defendants cite *Wilson v. Trumbull County Dept. of Job and Family Services*, 4:12 CV 02163, 2013 WL 3776743, at *7 (N.D. Ohio July 17, 2013) ("Court finds that a constitutional right to familial association between an adult child and his or her parent was not clearly established at the time Mr. Lemon was removed from Plaintiffs' residence."). However, since the *Wilson* decision, the Sixth Circuit "appeared to recognize a Fourteenth Amendment due process right to familial association as existing between a developmentally disabled adult child and her parents." *Wilson v. Trumbull Cty. Dep't of Job & Family Servs.,* No. 4:12 CV 02163, 2013 WL 5820276, at *7 (N.D. Ohio Oct. 29, 2013) (citing *Kolley v. Adult Protective Services,* 725 F.3d 581 (6th Cir. Aug. 5, 2013)).

Chief Reid knew Deputy Frye would be the responding officer. *Id.* In fact, the Court did acknowledge that Deputy Frye contacted Chief Reid after the arrest and specifically considered whether the Amended Complaint presented facts to suggest that Chief Reid planned or discussed how the responding officer should handle the situation. [DN 107 at 1519]. Moreover, even if the Court had given greater weight to Deputy Frye's statement to Chief Reid, it would not change the fact that Plaintiffs failed to plead specific facts indicating that Chief Reid was involved in a conspiracy motived by class-based animus as required to establish a § 1985(3) civil rights conspiracy. Thus, there is no need to alter the prior opinion on this ground.

Next, Plaintiffs state the Court erred by failing to "decide the issue of whether the underlying arrest [on July 26, 2017] was unlawful, when the Opinion implied that Ronald Sanders was causing a 'disturbance,' but did not determine by constitutional analysis that probable cause existed to arrest Ronald Sanders for any legal disturbance, and the Amended Complaint did not plead any facts that he was disorderly or disruptive." [DN 110 at 1544]. Moreover, Plaintiffs assert that "[t]he use of the term 'disturbance' in the Opinion raises the possibility that Ronald Sanders was being disorderly as a matter of law, although it did not analyze that issue . . ." *Id.* at 1547. Plaintiffs' argument is without merit. The Court did not use the word "disturbance" as a term of art, nor have Plaintiffs provided any legal authority to suggest that the term "disturbance" implies that an individual was acting disorderly as a matter of law. Rather, the Court used "disturbance" to generally describe the apartment complex manager's complaint to Chief Reid that a young man was walking around the Pembroke Apartments carrying a boombox and a bottle in a brown paper bag. [DN 51 at 778].

Furthermore, the Court was not required to determine whether the underlying arrest was unlawful at this point in the proceedings. The Pembroke Defendants filed a motion to dismiss for

failure to state a claim pursuant to Federal Rule 12(b)(6). In order to survive a motion to dismiss, a party must "plead enough 'factual matter' to raise a 'plausible' inference of wrongdoing." *16630 Southfield Ltd. P'ship*, 727 F.3d at 504 (quoting *Iqbal*, 556 U.S. at 678). As previously discussed, Plaintiffs failed to plead facts suggesting that Chief Reid violated Mr. Sanders' constitutional rights during the July 26, 2017 arrest. Therefore, the Court need not alter its prior opinion on this basis.

### B. Conspiracy to Make Mr. Sanders an Emergency Ward of the State Without Due Process

Next, Plaintiffs argue that the Court erred by "giv[ing] more weight to the four-month attenuation in time between Reid's installation of the video cameras and the emergency guardianship hearing than to his concealment of his presence in the courtroom as circumstantial evidence of his prior agreement with the Defendant, Assistant Christian County Attorney, Maureen Leamy, to deprive Ronald Sanders of his due process." [DN 110 at 1544–45]. More specifically, Plaintiffs claim that Chief Reid's deliberate "concealment of his presence away from the rest of the audience and beyond the view of the courtroom cameras," is evidence of a conspiratorial agreement between himself and Ms. Leamy. *Id.* at 1548. The Court specifically noted that Chief Reid was present during the proceedings, but still concluded that the "facts [were] insufficient to support a plausible suggestion that Chief Reid was involved in a conspiracy to violate Mr. Sanders' due process rights." [DN 107 at 1520]. Moreover, as previously noted, even if the Court had given more weight to Chief Reid's presence in the courtroom, Plaintiffs' conspiracy claim still fails because they did not plead sufficient facts to indicate that Chief Reid was involved in a conspiracy motived by class-based animus which is required to establish a § 1985(3) civil rights conspiracy. Thus, the Court need not alter its prior opinion on this ground.

19

### C. City's Policy or Custom of Targeting Mr. Sanders

Finally, Plaintiffs claim the Court erred in considering the "credibility of the allegation that Mayor Peterson stated that Ronald Sanders was arrested because of his race and disability, when the factual content pleaded by the allegation was sufficient to state the existence of a municipal policy or custom of targeting Mr. Sanders." [DN 110 at 1545]. Specifically, Plaintiffs claim the Court erroneously noted that Ms. Sanders "was the only witness to Mayor Peterson's statement that Ronald Sanders' arrest was justified because he is black and disabled." *Id.* at 1548. Moreover, Plaintiffs assert that "[t]his observation goes to the credibility of the allegation, not its plausibility." *Id.*

Plaintiffs' argument is without merit. First, the Court correctly noted in two instances in the Memorandum Opinion that Mayor Peterson made the statements in question to two "disability advocates." [*See* DN 107 at 1517; 1524]. The statement Plaintiffs refer to in the instant motion came as the Court recited the *Pembroke Defendants'* argument in support of their motion to dismiss. *Id.* at 1517. Moreover, Plaintiffs' assertion that the Court weighed the credibility of these statements is conclusory and unsupported by any specific facts. Indeed, the Court presumed all of the factual allegations in the Amended Complaint as true and drew all reasonable inferences in favor of the non-moving party as required in analyzing a 12(b)(6) motion to dismiss. *Total Benefits Planning Agency, Inc.*, 552 F.3d at 434 (citing *Great Lakes Steel,* 716 F.2d at 1105). Therefore, the Court need not alter its prior opinion on this basis.

Based on the foregoing, Plaintiffs have failed to demonstrate a need to correct a clear error in the prior Memorandum Opinion. Thus, their motion to alter judgment, [DN 110], must be denied.

### III.    Motion for Relief Based on Newly Discovered Evidence

Finally, the Court will examine Plaintiffs' motion for relief based on newly discovered evidence. [DN 111]. On February 17, 2020, the City of Pembroke held a Commission Meeting and live-streamed the proceeding on Facebook. Before the meeting was called to order, Plaintiffs claim Mayor Peterson engaged the following conversation with current Pembroke Police Chief Monty Strode:

> **Chief Strode:** It's just a matter of time before he's riding down the road with those headphones on. He don't listen –
>
> **Mayor Peterson:** Well, you need to stop him and put that vest on him or take that bike. (Laughter).
>
> **Chief Strode:** I'm no stranger to that – I'm just asking around. (Laughter).
>
> **Mayor Peterson** We need somebody to blame it on.
>
> **Chief Strode:** I'll be your fall guy. (Laughter).
>
> **Mayor Peterson** You're very good at it...You know he is...he is mentally –
>
> **Unkown [sic] voice:** Judy...you're being recorded. (Long pause).
>
> **Mayor Peterson** Turn it the fuck off. (Laughter).
>
> **Chief Strode:** They can still see you. (Laughter)
>
> **Mayor Peterson** Okay. We will call our February 17 meeting to stand to order.

*Id.* at 1553–54. In the instant motion, Plaintiffs claim this "new evidence mandates relief from the January 28 Order, because it confirms that the City of Pembroke had an official policy of targeting Ronald Sanders for arrest without probable cause, and it confirms the existence of a conspiratorial objective to falsely arrest Mr. Sanders that Mark Reid shared during his time in the post of Pembroke Police Chief." *Id.* at 1552. Although the exchange does not specifically mention Mr. Sanders by name, Plaintiffs believe the statement regarding headphones is a reference to Mr.

Sanders given that he is known around the community for listening to music from a boombox. *Id.* at 1555. Additionally, Plaintiffs claim that the vest mentioned by Mayor Peterson is a reference to an anti-suicide smock that psychiatric patient are sometimes placed in while incarcerated. *Id.* at 1554. While Plaintiffs acknowledge that further discovery is necessary to confirm the details of this exchange, they contend that the video demonstrates the City of Pembroke's policy or custom of targeting Mr. Sanders. *Id.* at 1556.

In response, Defendants argue that Plaintiffs' motion should be denied because it relies upon evidence that did not exist when the case was dismissed on January 28, 2020. [DN 120 at 1588]. Defendants correctly note that in the Sixth Circuit, "newly discovered evidence for motions under Rule 59 or Rule 60(b)(2) must pertain to evidence which existed at the time of trial." *Davis v. Jellico Community Hosp., Inc.*, 912 F.2d 129, 136 (6th Cir. 1990). However, as previously discussed, the Court's January 28th Memorandum Opinion and Order was not a final judgment, and therefore, Rule 59 and Rule 60 are not directly applicable. Moreover, while the video at issue was recorded after the Court granted Defendants' motion to dismiss, it was in existence before this case went to trial or was resolved pursuant to a final judgment.

In response, Defendants also note that this conversation took place months after the alleged constitutional violations. However, in *Monell* cases, many courts have found that "[p]ost-event evidence can shed some light on what policies existed in the city on the date of an alleged deprivation of constitutional right." *Bordanaroi v. McLeod*, 871 F.2d 1151, 1156 (1st Cir. 1989); *Foley v. Lowell*, 948 F.2d 10, 14 (1st Cir. 1991) ("Contrary to the City's exhortation that the date an incident occurs marks the outside date for evidence-garnering on such an issue, we think that actions taken subsequent to an event are admissible if, and to the extent that, they provide reliable insight into the policy in force at the time of the incident."); *Abdur-Rahim v. City of Columbus*,

No. 2:17-CV-601, 2019 WL 1873222, at *2–3 (S.D. Ohio Apr. 26, 2019)  (based on case law from the 1st, 3rd, 4th, 5th, 6th, 7th, 9th, 10th, and 11th Circuits, "the clear majority of case law supports the Magistrate Judge's conclusion that subsequent incidents could be probative of what policies, practices, or accepted customs existed that the time of the incident at issue, which would be relevant to Plaintiffs' *Monell* claims") (collecting cases). Without specifically ruling on the admissibility of the recording at hand, the Court acknowledges that post-event evidence is admissible in some *Monell* cases. Since this case is still in early stages and discovery has not yet been conducted, the Court will proceed as if this evidence is admissible and were included in the Amended Complaint.

Count Two of the Amended Complaint alleges that the City of Pembroke employed an explicit policy, observed custom, and deliberate practice of targeting, unlawfully arresting, or otherwise preying on Mr. Sanders for the purpose of violating his constitutional rights. [DN 51 at 808]. To succeed on a § 1983 claim against a local government, 'the plaintiff must prove the injury of which he complains was caused by an unconstitutional government policy or custom.'" *Monell v. Dep't of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A "municipality can be held liable under § 1983 for a single decision by the municipality's policymakers" if that policymaker had "final authority to establish policy with respect to the action ordered.'" *Feliciano v. City of Cleveland,* 988 F.2d 649, 655 (6th Cir. 1993) (quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)); *Meyers v. City of Cincinnati,* 14 F.3d 1115, 1118 (6th Cir. 1994). For instance, "[i]f the sheriff's actions constitute county 'policy,' then the county is liable for them." *McMillian v. Monroe County,* 520 U.S. 781, 783, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1987).

"At the pleading stage, a plaintiff must 'plead[] factual content that allows the court to draw the reasonable inference' that the [county] maintained a policy, custom, or practice" that deprived him of his constitutional rights." *Vanheck v. Marion Cty.*, No. 317CV00653RGJRSE, 2019 WL 2717773, at *6 (W.D. Ky. June 28, 2019) (quoting *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). "Conclusory allegations 'devoid of further factual enhancement' are insufficient." *Id.* (quoting *Iqbal*, 556 U.S. at 678; *see also D'Ambrosio v. Marino*, 747 F.3d 378, 388 (6th Cir. 2014)); *see also Vidal v. Lexington Fayette Urban Cty. Gov.*, 2014 WL 4418113, at *3 (E.D. Ky. Sep. 8, 2014) ("[A] complaint must contain more than bare statements that the alleged constitutional violation was caused by a policy or custom to survive a motion to dismiss.").

In the instant motion, Plaintiffs claim the newly discovered video provides direct evidence of an unwritten city policy or custom of falsely arresting or otherwise targeting Mr. Sanders in violation of his constitutional rights. [DN 111 at 1556]. The video was recorded before a City of Pembroke Commission meeting and includes a conversation between Mayor Peterson and the current police chief in which they discuss their desire to stop an individual and take their bike. The speakers acknowledged that this behavior would be inappropriate when they stated, "We need someone to blame it on"; and "I'll be your fall guy." Although the video does not explicitly reference Mr. Sanders, it mentions that the individual in question listens to headphones while riding their bike and the Amended Complaint states that Mr. Sanders is known in the community for listening to music around town. Moreover, the video also appears to reference a mentally disabled individual. Accordingly, the Court finds that this newly discovered evidence warrants amendment of the Court's prior opinion, as the video could provide a reasonable inference that the City of Pembroke maintained a policy, custom or practice of violating Mr. Sanders' rights such

24

that dismissal pursuant to Rule 12(b)(6) is no longer appropriate. Accordingly, the *Monell* claim against the City of Pembroke is reinstated. At the very least, additional discovery is needed. However, no hearing is required at this time.

Plaintiffs also argue that this newly discovered evidence confirms the Amended Complaint's allegations that Chief Reid and Mayor Peterson conspired to falsely arrest Mr. Sanders on July 26, 2017. [DN 111 at 1556]. However, this evidence does not change the fact that Plaintiffs failed to plead facts indicating that Chief Reid or Mayor Peterson were involved in a conspiracy motived by class-based animus as required to establish a § 1985(3) civil rights conspiracy. Thus, Plaintiffs are not entitled to relief from the Court's order as it relates to the dismissal of the conspiracy claims against Chief Reid and Mayor Peterson.

## CONCLUSION

For the reasons stated herein, **IT IS HEREBY ORDERED**:

(1) The Court's Memorandum Opinion and Order, [DN 107], is **AMENDED** to reflect the fact that the Amended Complaint did not allege a § 1983 conspiracy.

(2)  The Court's Memorandum Opinion and Order, [DN 113], is **AMENDED** to reflect the fact that the Amended Complaint did not allege a § 1983 conspiracy.

(3) Plaintiffs' Motion to Alter Judgment, [DN 110], is **DENIED**.

(4) Plaintiffs' Motion for Relief Based on Newly Discovered Evidence, [DN 111], is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs' *Monell* claims against the City of Pembroke are **REINSTATED.**

**IT IS SO ORDERED.**

*Thomas B. Russell*

**Thomas B. Russell, Senior Judge**
**United States District Court**

June 9, 2020

CC: Attorneys of Record