UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:19-CV-23-TBR

LEONIA SANDERS, *et al*.,                                              PLAINTIFFS

v.

CITY OF PEMBROKE, *et al*.,                                            DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Defendants Lincoln Foster and Maureen Leamy's Motion to Dismiss Plaintiffs' 42 U.S.C. § 1983 claim. [DN 28; DN 122; DN 133]. In its Memorandum Opinion of August 7, 2020, this Court directed Plaintiffs and Defendants Lincoln Foster and Maureen Leamy to provide supplemental briefing on two questions: (1) Does Kentucky Rule of Civil Procedure 4.01 apply to emergency guardianship proceedings; and (2) If so, would the prosecutors' instructions to the clerk pursuant to Rule 4.01 constitute an administrative prosecutorial function? [DN 131 at 1759]. Defendants filed their Supplemental Memorandum pursuant to the Court's request. [DN 133]. Plaintiffs have responded. [DN 135]. This matter is now fully briefed and ripe for adjudication. For the reasons stated herein, Defendants' Motion to Dismiss, [DN 133], is **DENIED.**

## BACKGROUND

Plaintiff Leonia Sanders lives in Pembroke, Kentucky with her twenty-seven-year-old son, Ronald Sanders. [DN 51 at 771–72]. Mr. Sanders suffers from mental illness and Ms. Sanders

worked with the Kentucky Cabinet for Health and Family Services ("CHFS") and Pennyroyal Mental Health Center ("PMHC") to manage her son's care. *Id.* at 772. However, Ms. Sanders claims that these institutions "betrayed her and Ronald, and with the help of county and municipal law enforcement, [] conspired to kidnap her son" by making him a ward of the state. *Id.* The Amended Complaint provides a detailed description of the alleged conspiracy and implicates multiple individuals in Christian County. Given that the current motion was filed by Lincoln Foster and Maureen Leamy, the Court will focus its recitation of the facts on these two defendants.

According to Plaintiffs, the alleged conspiracy began in February 2017. *Id.* at 777. Plaintiffs had recently moved to Pembroke and Mr. Sanders became known in the community for listening to his boombox and dancing around town. *Id.* On July 26, 2017, an apartment complex manager complained to the local police chief that a man with a boombox was dancing near her property and appeared to be intoxicated. *Id.* at 778. Shortly thereafter, Mr. Sanders was arrested and charged with disorderly conduct and alcohol intoxication. *Id.* at 779. He spent a night in jail and was released on July 27. Mr. Sanders was arraigned on the above charges on August 2, 2017. [DN 53 at 860]. His mother, Leonia Sanders, brought her son to his court appearance, and she was present when his case was called. *Id.* At an August 9, 2017 pretrial conference in the disorderly conduct and alcohol intoxication case, the issue of Mr. Sanders's competency was raised, and Mr. Sanders's public defender informed the court and the prosecutor, Maureen Leamy, that Mr. Sanders had been found incompetent before. *Id.* Subsequently, Mr. Sanders's attorney filed a motion for a psychiatric evaluation pursuant to KRS 504.100. *Id.* On September 15, 2017, the state court issued an order for an out-of-custody competency evaluation to be administered at Western State Hospital (WSH), where the order was faxed. *Id.* at 861.

A few months later, on October 23, 2017, Mr. Sanders was cited for Third Degree Criminal Trespassing, an unarrestable and unjailable violation, at the personal residence of Clara Edwards. *Id*. The next day, Ms. Sanders filed a petition to involuntarily hospitalize Mr. Sanders because he was hearing voices and hallucinating. [DN 51 at 781]. Mr. Sanders was subsequently admitted to WSH for three days from October 24 to October 27. *Id.* On December 13, 2017, Mr. Sanders appeared in court for a pretrial conference on both of his pending cases. *Id.* at 864. Leonia Sanders brought Mr. Sanders to his court appearance and was present when his case was called. *Id.*

On February 1, 2018, Assistant Christian County Attorney Lincoln Foster advised Heather Holland of CHFS that his office would be filing a Petition for Emergency Guardianship of Mr. Sanders. *Id.* at 786. Foster then downloaded the Petition for Emergency Guardianship form, and he notified Janet Tolliver of PMHC about the guardianship plans. [DN 103 at 1356]. During his phone call with Tolliver, Foster stated he was aware of Mr. Sanders's diagnosis and that "none of Ronald's charges would stick due to his diagnosis. However, Ronald will have new charges from trespassing at Ms. Clair's House." [DN 103-3 at 1383]. On February 2, Assistant County Attorney Maureen Leamy signed an affidavit in support of her sworn belief that Ronald Sanders was "an immediate danger to self and others." [DN 103-4 at 1384]. Foster notarized Leamy's signature on this affidavit. *Id.* at 1385; [DN 53 at 868]. On February 2, Leamy also signed a Petition to Determine if Disabled and an Application for Appointment of Fiduciary for Disabled Persons. [DN 51 at 786]. The Application for Appointment of Fiduciary listed the petitioner as "Commonwealth of Kentucky ex rel Maureen Leamy with CHFS Being Appointed" and included Ms. Leamy's signed affidavit stating that Mr. Sanders was in imminent harm, or a danger or a threat of danger to himself or others. *Id.*; [DN 103-2 at 1281]. On February 8, Ms. Holland contacted Jimmy Coyer at PMHC to alert him that Mr. Sanders could require placement at PMHC

depending on the outcome of the County Attorney's guardianship petition. [DN 51 at 787–88]. On February 9, the guardianship petition and affidavit were filed with the court. [DN 125-2 at 1673–74]; [DN 125-3 at 1675–76]. Also, on February 9, the Christian County District Court entered an order appointing Clayton Adams as guardian *ad litem* for Mr. Sanders. [DN 51 at 788].

On February 13, 2018, the Christian County District Court conducted an emergency guardianship hearing. *Id.* at 789. Mr. Sanders and Ms. Sanders claim they were not notified of the proceeding and did not attend; however, Mr. Sanders's previously appointed guardian *ad litem* was present on his behalf. *Id.* First, the presiding judge entered an order appointing Ms. Leamy and CHFS as Mr. Sanders's emergency fiduciaries. *Id.* The order suspended Mr. Sanders's right to determine his living arrangement, to consent to medical procedures, and to handle financial responsibilities. *Id.* Additionally, the court ordered a sheriff to transport Mr. Sanders to PMHC in Madisonville, Kentucky. *Id.* at 790. Next, the court conducted a review of the emergency appointment. *Id.* Ms. Leamy testified that Mr. Sanders's mental illness and his mother's lack of supervision caused Mr. Sanders to incur the public intoxication and trespassing charges. *Id.* Moreover, she claimed the emergency appointment was necessary for Mr. Sanders to avoid future criminal charges and that CHFS was the most appropriate entity to take guardianship. *Id.* The court concluded the proceedings by ruling that Mr. Sanders would reside at PMHC until a disability hearing took place on April 4, 2018. *Id.*

On February 13, 2019, Plaintiffs filed the current action alleging violations of 42 U.S.C § 1985 and 42 U.S.C. § 1983, as well as defamation, abuse of process, assault, battery, false imprisonment, false arrest, and outrage. [*See* DN 1]. Lincoln Foster and Maureen Leamy filed the instant Motion to Dismiss alongside several other dispositive motions filed by other Defendants in this case. Subsequently, in its August 7, 2020 Order, this Court dismissed all claims in the above-

captioned action against Defendants Pennyroyal Mental Health Center, Reba Pleasant, Janet Tolliver, Heather Holland, Lindee Monroe, Rebecca Perry, and Susan Redmond-Vaught. [DN 132 at 1774]. The following claims remain: (1) *Monell* claim against City of Pembroke; (2) 42 U.S.C. § 1983 false arrest claim against Frye; (3) 42 U.S.C. § 1983 excessive force claim against Burgess; (4) 42 U.S.C. § 1983 procedural due process claim against Foster and Leamy; (5) state law assault and battery claim against Burgess; and (6) state law false imprisonment claim against Frye. *Id.*

There is currently one motion before the Court: Defendants Lincoln Foster and Maureen Leamy's Motion to Dismiss Plaintiffs' procedural due process claim. In their response to Defendants' motion, Plaintiffs allege that Mr. Sanders's due process rights were violated when (1) Leamy presented inaccurate and misleading information to the trial judge during the emergency guardianship proceeding, and (2) Leamy and Foster failed to provide proper notice of the emergency guardianship hearing to Mr. Sanders. [DN 125 at 1656.] In its August 7, 2020 Memorandum Opinion Regarding Plaintiffs' first allegation, the Court found that by taking the stand and testifying to the truth of facts during the guardianship proceeding, Leamy acted as a complaining witness, not an advocate. [DN 131 at 1758]. As such, the Court determined that Defendants failed to meet their burden of demonstrating that Leamy was entitled to absolute prosecutorial immunity for her testimony during the emergency guardianship proceeding. *Id.* Thus, the Court denied Defendants' motion to dismiss this aspect of Plaintiff's § 1983 claim. *Id.*

Regarding Plaintiffs' second allegation, the Court considered whether Leamy and Foster are entitled to absolute immunity for their alleged failure to notify Mr. Sanders of the emergency guardianship proceedings in violation of his procedural due process rights. [*Id.*] After reviewing the parties' arguments and relevant case law, the Court determined that additional briefing was necessary in order to properly evaluate Defendants' motion to dismiss. The Court directed the

parties to provide supplemental briefing on two questions: (1) Does Kentucky Rule of Civil Procedure 4.01 apply to emergency guardianship proceedings; and (2) If so, would the prosecutors' instructions to the clerk pursuant to Rule 4.01 constitute an administrative prosecutorial function? [*Id.* at 1759.]

Given that no discovery has been conducted in this matter, the Court will analyze the instant motion pursuant to Civil Rule 12(b)(6). Courts evaluating motions to dismiss are generally limited to consideration of the complaint and any exhibits attached to the complaint. *Father Flanagan's Boys Home v. Donlon*, No. 1:18-CV-644, 2020 WL 1469469, at *4 (S.D. Ohio Mar. 26, 2020). "However, a court may consider certain materials outside of the pleadings without converting the motion to one for summary judgment." *Id.* These materials include "'exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein.'" *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680–81 (6th Cir. 2011) (quoting *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)). The Court will limit its analysis according to this standard.

## LEGAL STANDARD

The Court looks to the legal standards for Federal Rule of Civil Procedure 12(b)(6) motions to dismiss and the legal standards for absolute immunity in deciding whether to dismiss the plaintiffs' § 1983 failure to provide notice claim. In a motion to dismiss pursuant to Rule 12(b)(6), "[t]he defendant has the burden of showing that the plaintiff has failed to state a claim for relief." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991)). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a motion to dismiss

under Rule 12(b)(6), a party must "plead enough 'factual matter' to raise a 'plausible' inference of wrongdoing." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). When considering a Rule 12(b)(6) motion to dismiss, the Court must presume all of the factual allegations in the complaint are true and draw all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc.*, 552 F.3d at 434 (citing *Great Lakes Steel,* 716 F.2d at 1105). "The court need not, however, accept unwarranted factual inferences." *Id.* (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). Should the well-pleaded facts support no "more than the mere possibility of misconduct," then dismissal is warranted. *Iqbal*, 556 U.S at 679. The Court may grant a motion to dismiss "only if, after drawing all reasonable inferences from the allegations in the complaint in favor of the plaintiff, the complaint still fails to allege a plausible theory of relief." *Garceau v. City of Flint*, 572 F. App'x 369, 371 (6th Cir. 2014) (citing *Iqbal*, 556 U.S. at 677–79).

The Sixth Circuit provided a concise explanation of absolute immunity in *Hall v. City of Williamsburg*:

> "An absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity." *Imbler v. Pachtman*, 424 U.S. 409, 419 n.13, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). Absolutely protected acts include those "undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State...." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). We have employed a "functional approach" to determine whether a prosecutor is entitled to absolute immunity, looking to "the nature of the function performed, not the identity of the actor who performed it" when assessing whether conduct is prosecutorial, and thus absolutely protected. *Id.* at 269, 113 S.Ct. 2606 (citation omitted).

Absolute immunity protects "only ... actions that are connected with the prosecutor's role in judicial proceedings, not ... every litigation-inducing conduct." *Adams v. Hanson*, 656 F.3d 397, 402 (6th Cir. 2011) (alteration in original) (quoting *Burns v. Reed*, 500 U.S. 478, 494, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991) ). Absolute immunity is not available to prosecutors when they perform " 'investigative' or 'administrative' functions unrelated to judicial proceedings." *Id.* In addition, a prosecutor is not entitled to absolute immunity when he acts as a complaining witness by making sworn statements to the court in support of a criminal complaint. *Kalina v. Fletcher*, 522 U.S. 118, 129-131, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997).

*Hall v. City of Williamsburg*, 768 F. App'x. 366, 374 (6th Cir. 2019). Ultimately, Foster and Leamy bear the burden of demonstrating that their actions were an "'integral part of the judicial process' or . . . [were] 'intimately associated with the judicial process'" in order to claim absolute immunity." *Wendrow v. Michigan Dep't if Human Servs*., 534 F. App'x 516, 527 (6th Cir. 2013) (quoting *Koubriti v. Convertino*, 593 F.3d 459, 467 (6th Cir. 2010)).

## DISCUSSION

In their motion to dismiss, [DN 28], Foster and Leamy argue that absolute immunity protects them against the claim that they violated Plaintiffs' due process rights by failing to provide notice of the guardianship proceedings. *Id.* at 227–31. They support this argument by reasoning that "the task of issuing a summons and petition was the responsibility of the clerk of court." *Id.* at 231. Had Defendants assumed responsibility of issuing a summons and petition, they argue, they would have "shed their absolute immunity" because such a task is an administrative or investigative activity to which absolute immunity does not apply. *Id.* Essentially, Defendants argue that it was not their duty to provide notice, but if they had assumed that duty, they could be held liable, because they would not be protected by absolute immunity. In response, Plaintiffs acknowledge that under KRS § 387.740, the clerk of court is responsible for issuing the summons. [DN 125 at 1659]. However, they maintain that Defendants were required by Kentucky Rule of

Civil Procedure 4.01(1)(a) "to instruct the clerk by what method and what address to send the summons." *Id.* Subsequently, the Court requested supplemental briefing on two questions: (1) Does Kentucky Rule of Civil Procedure 4.01 apply to emergency guardianship proceedings; and (2) If so, would the prosecutors' instructions to the clerk pursuant to Rule 4.01 constitute an administrative prosecutorial function? [DN 131 at 1759.]

In their supplemental brief, Defendants maintain that they should be shielded by absolute immunity because the notice requirements for guardianship proceedings are governed solely by Chapter 387 of the Kentucky Revised Statutes and not by CR 4.01, and Chapter 387 places the duty of providing notice of statutory guardianship hearings on the clerk of court. [DN 133 at 1776–77]. Defendants rely on the text of Kentucky Rule of Civil Procedure 1, which states, in relevant part, "[t]hese rules govern procedure and practice in all actions of a civil nature in the court of Justice except for special statutory proceedings, in which the procedural requirements of the statute shall prevail over any inconsistent procedures set forth in the Rules." Ky. R. Civ. P. 1(2). Defendants argue that because Chapter 387 includes separate notice requirements, it qualifies as a special statutory proceeding, and its procedures prevail over the notice requirements set out in the Kentucky Rules of Civil Procedure. [DN 133 at 1777]. Defendants cite two statutes in support of their argument. *Id.* at 1776-77. First, KRS § 387.620(4) provides: "Notice of the time and place of the hearing shall be given by the clerk of the court not less than fourteen (14) days prior to the hearing to both parties and all persons named in the petition." Second, in the instance of an emergency guardianship proceeding, KRS 387.740(3) requires: "Notice of the time and place of the hearing shall be given not less than forty-eight (48) hours prior to the hearing to all persons named in the petition and to the county attorney." *Id.* at 1776. Thus, according to Defendants, because the Kentucky statutes imposed no duty upon the defendants to provide notice, and because

those statutes alone control notice requirements in guardianship proceedings, the defendants could not have violated Plaintiffs' due process rights by failing to provide notice. *Id*.

Defendants go on to argue that even if the Court finds that CR 4.01 applies to Chapter 387 proceedings and that Foster and Leamy had a duty to provide notice, breach of that duty would be a prosecutorial rather than administrative action, and thus, they would still be protected by absolute immunity. *Id*. at 1778. The Court notes that this argument stands in contrast to Defendants' previous explanation in their original motion to dismiss that "[b]y assuming the responsibility for the issuance of a summons and petition, these Defendants would have risked losing absolute immunity." [DN 28 at 231].

Plaintiffs responded, countering that Kentucky Rule of Civil Procedure 4.01 *does* apply to Chapter 387 proceedings. [DN 135 at 1784]. Plaintiffs contend that the proceedings contemplated by both KRS § 387.530 and KRS § 387.740 are civil actions as defined by the Kentucky Rules of Civil Procedure and Kentucky case law, and as such, are "commenced with the filing of a complaint and issuance of a summons" under CR 4.01. *Id*. at 1785, n.2 (first citing *West v. Commonwealth*, 887 S.W.2d 338, 344 (Ky. 1994) (overruled on other grounds) ("A civil action is commenced by the filing of a complaint or petition under CR 3."); and then citing *Davenport v. Norsworthy*, 2003 Ky. App. Unpub. LEXIS 6 (Ky. App. 2003) ("In this Commonwealth, a civil action (including an original action) is commenced upon the filing of a complaint (or petition) and the issuance of summons (or warning order) in good faith under CR 3.01.")). Plaintiffs also reason that the provisions governing notice of the emergency guardianship hearing in Chapter 387 "do not apply to notice of the commencement of the action itself." *Id*. Instead, they apply only to notice of the emergency guardianship *hearing*. *Id*. Therefore, regardless of Chapter 387's notice requirements for guardianship hearings, Defendants still had a duty to direct the clerk to provide

notice of the filing of the emergency guardianship and disability petition pursuant to CR 4.01. Plaintiffs further argue that the prosecutors' duties of providing notice are administrative rather than prosecutorial, "because any interested person can file an emergency guardianship or disability petition." *Id.* at 1787. Plaintiffs also contend that "[t]he plain language of CR 4.01 requires a petitioner to notify the clerk to issue a summons and by which method to serve it . . . the duties to notify the clerk to issue a summons and direct the clerk by which method to achieve service constitute an administrative act that is not part of a prosecutor's function as an advocate." *Id.*

The Court finds that Defendants have not carried their burden in a motion to dismiss to show that Plaintiffs have not stated a plausible claim for relief. First, Defendants have not convinced the Court that they were not obligated by the Kentucky Rules of Civil Procedure to direct the clerk to provide notice of the filing of the petition. Even if the clerk was solely responsible for providing notice of the emergency guardianship *hearing* pursuant to KRS § 387.740(3), the statute does not include specific notice requirements regarding the emergency petition itself. On this point, Defendants argue that emergency guardianship proceedings are the kind of "special statutory proceedings" referred to in Kentucky Rule of Civil Procedure 1. [DN 133 at 1777]. As such, Defendants argue, the Kentucky Rules of Civil Procedure—and thus, the notice provisions in the rules—do not apply, because "the procedural requirements of the statute shall prevail over any inconsistent provisions set forth in the Rules." *Id.* (quoting Ky. R. Civ. P. 1(2)). On the other hand, Plaintiffs argue that "KRS 387.740 creates a statutory civil action," and "CR 3.01 provides that a civil action in Kentucky is commenced with the filing of a complaint and issuance of a summons." [DN 135 at 1786].

The Court does not find it necessary to specifically define emergency guardianship proceedings as civil actions or special statutory proceedings. The language of Kentucky Rule of

Civil Procedure 1 is decisive here: "These Rules govern procedure and practice in ***all actions of a civil nature*** in the Court of Justice except for special statutory proceedings, in which the procedural requirements of the statute shall prevail over any ***inconsistent procedures*** set forth in the Rules." Ky. R. Civ. P. 1(2) (emphasis added). KRS § 387.740 is silent on notice of the emergency guardianship petition; it only specifies a procedure for notice of the subsequent emergency guardianship hearing. Thus, the procedures of the Kentucky Rules of Civil Procedure and the procedures of the statute are not inconsistent with one another. Instead, the Court finds that the notice requirements of KRS § 387.740(3) and CR 4.01 must work in tandem in the case of emergency guardianship proceedings, the former governing notice requirements for emergency guardianship hearings, and the latter governing notice requirements for the filing of emergency guardianship petitions. Accordingly, Kentucky Rule of Civil Procedure 4.01 required Defendants as the initiating party to direct the clerk in issuing a summons. The Court rejects Defendants' argument that they had no duty to provide notice to Mr. Sanders or his mother.

The Court further finds that Defendants have not carried the burden of showing that the notice responsibilities required by CR 4.01 constitute prosecutorial functions protected by absolute immunity. Defendants themselves stated in their original motion to dismiss that "[b]y assuming the responsibility for the issuance of a summons and petition, these Defendants would have risked losing absolute immunity." [DN 28 at 231]. While it was not up to the Defendants whether to assume the notice responsibilities, the action required by CR 4.01 was an administrative function to which absolute immunity does not apply. The Court agrees with Plaintiffs that "notify[ing] the clerk to issue a summons and by which method to serve it . . . constitute[s] an administrative act that is not part of a prosecutor's function as an advocate." [DN 135 at 1787]. Defendants' failure to comply with CR 4.01 is not protected by absolute immunity, and thus, the Court cannot find

that Plaintiffs failed to state a claim upon which relief can be granted as to the § 1983 failure to

provide notice allegation. Accordingly, Defendants' Motion to Dismiss must be DENIED.

## CONCLUSION

For the reasons stated herein, **IT IS HEREBY ORDERED**: Defendants' Motion to

Dismiss, [DN 133], is **DENIED.**

**IT IS SO ORDERED.**

**Thomas B. Russell, Senior Judge**
**United States District Court**

December 3, 2020

CC: Attorneys of Record